Mary Ann GREEN, Natural Mother
of Gerald McAdoo, Deceased,
Appellant,

v.

PENN–AMERICA INSURANCE
CO., et al., Respondents.

No. WD 67165.

Missouri Court of Appeals,
Western District.

Oct. 16, 2007.

Application for Transfer to Supreme Court
Denied Nov. 20, 2007.

Application for Transfer Denied
Jan. 22, 2008.

David M. Mayer, Kansas City, MO, for Appellant.

Michael D. Hufft, Kansas City, MO, for Respondent.

Before HOWARD, C.J., and SPINDEN and HOLLIGER, JJ.

VICTOR C. HOWARD, Chief Judge.

After obtaining a judgment for invasion of privacy and wrongful death against the owner of a St. Louis area nightclub, Mary Ann Green (Green) brought an equitable garnishment action under section 379.200 against Penn–Star Insurance Company (Penn–Star) in Jackson County.[1] She now appeals the adverse decision of the Jackson County Circuit Court. Green claims that the circuit court erred in ruling the invasion of privacy portion of the St. Louis judgment was void because it failed to state the cause's essential elements and that the exclusion clause for judgments arising from assault and battery excluded coverage for a judgment sounding in nuisance. We reverse the portion of the judgment pertaining to the sufficiency of Green's initial invasion of privacy pleading and affirm the remainder of the judgment.

## Background

On January 6, 2003, an unidentified person killed Green's son, Gerald McAdoo (Gerald), outside of Club Liquid, operated by Club Concepts, Inc. (Club) in St. Louis, Missouri. As Gerald was leaving the nightclub, a fight ensued, and he walked over to watch. A single shot fired by an unidentified assailant struck and killed Gerald. Club had earlier leased the premises from BENHR, Inc. (Landlord).

Dangerous and illegal behavior, including frequent assaults, armed robbery, gunfire, lewd and lascivious acts, intoxicated patrons, and underage consumption of al-

cohol, plagued the operation of the nightclub prior to Gerald's death. In the three years preceding the death of Gerald, Club generated ninety-seven police incident reports for criminal activity, seventeen of which were assaults on patrons, and three of which were armed robberies. Club did not provide secure parking for their patrons. Consequently, the St. Louis court determined the property owned by Landlord and operated by Club constituted a public nuisance.

After Gerald's death, Club publicly advertised that it would donate the following weekend's nightclub proceeds to Gerald's family and operated at full capacity that weekend. It did not have Gerald's family's consent or other authority to use his name. Club has not provided Green with any of the proceeds from that weekend.

Penn–Star, the defendant in the current action, insured both Club and Landlord under a Commercial General Liability Policy (policy) at the time of Gerald's death. The policy covered both the sums the insureds would become obligated to pay as a result of "bodily injury" or an invasion of a person's "right to privacy." The policy, however, created an exclusion of liability for assault and battery "[w]hether or not caused by or arising out of the insured's failure to properly supervise or keep the insured's premises in a safe condition."

Green instituted a suit for wrongful death and invasion of privacy against Club and Landlord. Penn–Star denied that it would be liable under the insurance policy based on the assault and battery exclusion and did not hire an attorney to defend Club and Landlord. Club, although properly served, did not enter an appearance or file responsive pleadings. Landlord en-

1. All citation to statutes refers to RSMo (2000) and all citation to rules refers to Missouri Supreme Court Rules (2007).

tered an appearance and defended the lawsuit without Penn–Star's assistance. On March 11, 2005, the St. Louis Circuit Court found Club and Landlord jointly liable for the nuisance, which caused Gerald's death. It determined damages to be $3,500,000. The court also found Club liable for invasion of privacy and determined damages to be $500,000. Moreover, the court made an explicit finding that Club lacked authority or consent to use Gerald's name for a promotion.

■ To satisfy the wrongful death and invasion of privacy judgments, Green brought the current equitable garnishment[2] action against Penn–Star in Jackson County to seek recovery under the policy described above.[3] The Jackson County Circuit Court entered judgment in favor of Penn–Star. The court determined that the invasion of privacy judgment was void because the petition on which the St. Louis court judgment rested failed to adequately state a cause of action for invasion of privacy; it did not plead a lack of consent to use Green's name or likeness. Furthermore, it found the St. Louis court issued a default judgment and, therefore, the petition was unamendable. The Jackson County court found that the St. Louis court lacked subject matter jurisdiction over the invasion of privacy claim and that portion of the judgment was void and unenforceable. Furthermore, the assault and battery exclusion in the policy pre-vented Green from recovering from Penn–Star on the wrongful death claim.

### Standard of Review

■ "Questions of law are reviewed de novo." *Pierce v. BSC, Inc.* 207 S.W.3d 619, 621 (Mo. banc 2006). Where the facts are uncontested, as is the case here, the issue of whether a default judgment is void for want of jurisdiction is reviewed *de novo. Jew v. Home Depot USA, Inc.*, 126 S.W.3d 394, 397 (Mo.App. E.D.2004). Furthermore, the interpretation of an insurance contract is a question of law and, accordingly, is reviewed *de novo. Green v. Federated Mut. Ins. Co.*, 13 S.W.3d 647, 648 (Mo.App. E.D.1999).

### Sufficiency of the Invasion of Privacy Petition

■ The St. Louis court ruled that Club invaded Green's right to privacy by appropriating Gerald's name for its own advantage and awarded Green $500,000.[4] Our current task is to determine if that judgment was void and unenforceable because the petition omitted an element of the invasion of privacy tort. Club posits that to prevail on a claim of invasion of privacy, appropriation of name or likeness, the plaintiff must prove that there was a publication by the defendant, the publication contains the plaintiff's name or likeness, the defendant derives an advantage from the publication, and the defendant lacks plaintiff's consent or other right to publish the name or likeness.[5] *See generally*

---

**2.** "An equitable garnishment action consists of proof that plaintiff has obtained a judgment in his favor against an insurance company's insured during the policy period and the injury is covered by the insurance policy." *Peck v. Alliance Gen. Ins. Co.*, 998 S.W.2d 71, 74 (Mo.App. E.D.1999).

**3.** Penn–Star's agent is located in Independence, Missouri.

**4.** Missouri recognizes four types of invasion of privacy. *Y.G. v. Jewish Hosp. of St. Louis*, 795 S.W.2d 488, 497 (Mo.App. E.D.1990). We are currently concerned with only the appropriation of name or likeness form of the tort.

**5.** Both the Restatement and Missouri Practice Personal Injury and Torts Handbook formulations omit lack of consent as an element. RESTATEMENT (SECOND) OF TORTS § 652C (1977) (stating, "[o]ne who appropriates to his own

*Nemani v. St. Louis Univ.*, 33 S.W.3d 184, 185–86 (Mo. banc 2000); *Munden v. Harris*, 153 Mo.App. 652, 134 S.W. 1076, 1079 (Mo.App.1911).[6] Green's petition at the St. Louis court did not aver that Club lacked consent or authority to use Gerald's name or likeness.[7] It did, however, allege that Club used Gerald's name in a radio advertisement, derived an advantage from that advertisement, and, consequently, Green was entitled to relief.

■■■ We begin the analysis by noting that a valid judgment is a necessary prerequisite in an equitable garnishment action. *First Nat'l Bank v. Conner*, 485 S.W.2d 667, 671–72 (Mo.App.1972). Furthermore, the failure to adequately plead a cause of action will deprive the court of jurisdiction and thus render any purported judgment void. *Adkisson v. Dir. of Revenue*, 891 S.W.2d 131, 132 (Mo. banc 1995).

Subject matter jurisdiction is composed of two parts. First, it assumes the power of the court to consider the matter brought before it. Second, it includes the ability of the court to grant the relief requested by the person seeking relief. As to the latter, "if a petition wholly fails to state a cause of action, the defect is jurisdictional." *State ex rel. Fletcher v. Blair*, 352 Mo. 476, 178 S.W.2d 322, 324 (1944). Rule 55.27(g)(2) therefore provides that "[a] defense of failure to state a claim upon which relief can be granted" may be made by motion "on appeal." *Munson v. Dir. of Revenue*, 783 S.W.2d 912, 916 (Mo. banc 1990) (Robertson, J. dissenting). We therefore, examine whether the petition provided jurisdiction to the St. Louis court.

■■■ Missouri employs what is commonly referred to as fact pleading. *Luethans, v. Wash. Univ.*, 894 S.W.2d 169, 171 (Mo. banc 1995). Compared to its federal analogue, notice pleading, fact pleading demands a relatively rigorous level of factual detail. *See State ex rel. Papin Builders, Inc. v. Litz*, 734 S.W.2d 853, 858 (Mo.App. E.D.1987) (overturned on other grounds). Under the fact pleading regime, the petition must describe ultimate facts demonstrating entitlement to the relief sought. *Westphal v. Lake Lotawana Ass'n*, 95 S.W.3d 144, 152 (Mo.App. W.D.2003). A valid petition states " 'fact[s] in support of *each* essential element of the cause pleaded.' " *Brock v. Blackwood*, 143 S.W.3d 47, 57 (Mo.App. W.D.2004) (emphasis added)

use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy."); ROBERT H. DIERKER & RICHARD J. MEHAN, MISSOURI PRACTICE PERSONAL INJURY AND TORTS HANDBOOK § 25.7 (2007) (stating:

If the claim of invasion of privacy concerns the use of the plaintiff's name or likeness by the defendant, the petition must contain:
· a description of the plaintiff;
· a description of the defendant;
· allegations of venue;
· allegations showing that the defendant appropriated and published the plaintiff's name or likeness;
· allegations showing that the appropriate and publication of the plaintiff's name or likeness was to the defendant's advantage; and
· claims of actual and punitive damages.)

6. It is worthy to note that neither case lists the elements of the appropriation of name or likeness tort with absence of consent as an element. Rather, each describes a tortious situation where a name or likeness was appropriated for the publisher's advantage without consent. In light of the formulations of the tort in both the Missouri Practice Series and the Restatement (Second) of Torts and the fact that neither Club nor Green raises the issue, we decline to hold that lack of consent is an element of the appropriation of name or likeness tort. Nevertheless, for the remainder of the opinion, we assume that lack of consent is an element of the cause.

7. However, the St. Louis court specifically found Club "did not have the authority and/or consent to use [Gerald]'s death as a promotion."

(quoting *Duvall v. Lawrence,* 86 S.W.3d 74, 80 (Mo.App. E.D.2002)). When considering the sufficiency of the petition the trial court must "consider the pleadings, allowing them their broadest intendment, and accepting as true the facts as pleaded with all reasonable inferences arising therefrom. If the allegations invoke principles of substantive law entitling a plaintiff to relief, the petition should not be dismissed." *Norber v. Marcotte,* 134 S.W.3d 651, 657 (Mo.App. E.D.2004) (citation omitted).

 To counterbalance the rigorous level of factual detail required by fact pleading and the technical dismissal of cases based on insufficient, yet readily curable petitions, Missouri has adopted powerful tools to amend defective petitions in non-default settings. However, Missouri's liberal rules for amending petitions are inapplicable in the default judgment context. "[T]he relief granted upon default may not be 'other or greater than that which he shall have demanded in the petition as originally filed and served on defendant.'" *In re Estate of Scholz,* 615 S.W.2d 459, 462 (Mo.App. E.D.1981) (quoting § 511.160). "Rule 55.33(b), which allows pleadings to be amended to conform to the evidence, does not apply in default proceedings." *Jew,* 126 S.W.3d at 398.

While the parties vigorously dispute whether the judgment entered by the St. Louis court was a "default judgment" for the purposes of determining if the St. Louis court permitted amendment of the petition by implication, we can assume for the remainder of the opinion that the judgment entered was a default, without so deciding. Even if it was a default judgment, the Jackson County court clearly erred in ruling that the St. Louis court lacked jurisdiction.

 Not only does Missouri provide liberal rules of amendment to counteract the harsh requirements of fact pleading, but also it employs liberal rules of construction after a judgment has been rendered.

The rule of construction applicable to a pleading is varied by the stage of the case at which the petition, answer, or reply may be considered; while the pleading is more rigidly construed before verdict, a relaxed and more favorable rule obtains after verdict, and every reasonable intendment is then brought to aid the pleading assailed.

*State ex. rel. Gardner v. Webber,* 177 Mo. App. 60, 164 S.W. 184, 186 (Mo.App.1914) (quoting *Farmers' Bank v. Manchester Assurance Co.,* 106 Mo.App. 114, 80 S.W. 299, 301 (Mo.App.1904)). Before a judgment has been dispensed, "the court will give [the pleading] the benefit of every reasonable intendment favorable to the pleader and judge it with broad indulgence." *Auto Alarm Supply Corp. v. Lou Fusz Motor Co.,* 918 S.W.2d 390, 392 (Mo.App. E.D. 1996). After a judgment has been rendered, "we apply a less stringent standard in evaluating its sufficiency." *Vittengl v. Fox,* 967 S.W.2d 269, 276 (Mo.App. W.D. 1998). "[A] petition will be found sufficient after verdict if, after allowing reasonable inferences and matters necessarily implied from the facts stated, there[8] is sufficient to *advise* defendant with reasonable certainty as to the cause of action it is called upon to meet and bar another action for the same subject-matter." *Barber v. Allright Kansas City, Inc.,* 472 S.W.2d 42, 44 (Mo.App.1971) (internal quotation omitted). *See also Phillips v. Bradshaw,* 859 S.W.2d 232, 234 (Mo.App. S.D.1993) (applying the standard to a motion to set aside a default judgment); *Browning v.*

---

8. Presumably, the author of *Barber* meant "it" or "the petition" in place of "there."

*Salem Mem. Dist. Hosp.*, 808 S.W.2d 943, 946 (Mo.App. S.D.1991); *Sumpter v. J.E. Sieben Constr. Co.*, 492 S.W.2d 150, 153 (Mo.App.1973); *Thomasson v. Mercantile Town Mut. Ins. Co.*, 217 Mo. 485, 116 S.W. 1092, 1096 (Mo.1909) (stating, "the well-settled rule both at common law and under our Code is that if a material matter be not expressly averred in the petition, but the same is necessarily implied by what is stated in the context, the defect is cured after verdict; the doctrine resting on the presumption that plaintiff proved on the trial the facts imperfectly alleged, the existence of which was essential to his recovery."). *See generally Kennedy v. Kennedy*, 223 Mo.App. 1116, 23 S.W.2d 1089, 1092 (Mo.App.1930) (holding that a default divorce decree valid when collaterally attacked even in the absence of a required jurisdictional fact in the pleading). After a judgment is rendered attacks against a petition shift from challenging the sufficiency of the elements pleaded to challenging the sufficiency of the notice provided to the opposing party.

 A petition will not be deemed fatally defective where it is reasonably apparent what cause of action the petition pled. *Barber*, 472 S.W.2d at 44–45. In *Weidner v. Anderson*, 174 S.W.3d 672 (Mo. App. S.D.2005), a petition failed to aver an essential element in a breach of contract claim, namely that the petitioner preformed her duties under the contract. *Id.* at 681. The court began its analysis by noting that the party seeking to have the petition ruled defective only sought to have the petition dismissed after the judgment had been entered. *Id.* The petition alleged the existence of a contract, breach of that contract, damages caused by that breach, and entitlement to relief. *Id.* at 682. Although the petition did not allege that the petitioner actually performed her duties under the contract and was thus deficient, the court held, "[t]he only reasonable inference to be accorded these allegations is that [petitioner] did not breach the contract and performed her duties thereunder. Otherwise, she would be entitled to no relief. Any other reading of these allegations would be unduly strained." *Id.* When attacked for want of subject matter jurisdiction after a judgment had been rendered, the combination of significant notice to the opposing party and a claim of entitlement to relief cured any deficiency in the pleading.

The instant case is similar. The petition ostensibly lacked an essential element of the cause: lack of consent or authority. Nevertheless, it alleged sufficient other facts (a publication of Gerald's name or likeness by Club, from which Club gained an advantage) to give reasonable notice that Club was being sued for invasion of privacy, appropriation of name or likeness. Furthermore, the petition did not insinuate consent and claimed entitlement to relief. This is the only reasonable reading of the petition.[9] Club was apprised of the claim it faced.

Penn–Star attempts to distinguish *Weidner* by noting that the defending party in

---

9. Penn–Star argues the petition is ambiguous in that it could either be construed to sound in contract, had there been consent, or appropriation of name or likeness, had there been a lack of consent. We find this contention meritless. The petition does not provide even the slightest suggestion of the existence of a contract and mutual rights and obligations arising under that contract, both necessary elements of breach of contract. *Gilomen v. Sw.* *Mo. Truck Ctr.*, 737 S.W.2d 499, 500–01 (Mo. App. S.D.1987) ("To state a cause of action for breach of contract, a plaintiff must allege (a) the making and existence of a valid and enforceable contract between the plaintiff and the defendant, (b) the right of the plaintiff and the obligation of the defendant thereunder, (c) a violation thereof by the defendant, and (d) damages resulting to the plaintiff from the breach.").

that case had admitted the essential performance element in their pleading. While it is true that in *Weidner* the opposing party admitted the essential element in their pleading, this is an additional and independent reason for finding a valid judgment. The court noted the claim of a deficient petition "must fail for a variety of reasons." *Id.* at 681. The liberal construction of a pleading in post-judgment setting is a complete and independent rationale for permitting a petition with certain omitted elements to stand. *Weidner* is on point.

Finally, we note the purpose for narrowly construing default judgments in the current setting would not be well served in finding the petition defective. The rule is designed to subject the defaulting defendant to only so great a liability as designated in the petition. "Missouri is a 'fact' pleading state as opposed to the notice pleading standard under the Federal Rules of Civil Procedure. That fact has led to the rule that, in a default case, the petitioner is not entitled to relief beyond that requested in the petition." *In re Marriage of Boston,* 104 S.W.3d 825, 833 (Mo. App. S.D.2003) (citation omitted). The plaintiff cannot seek to add a wholly additional theory, *see Servco Equip. Co. v. C.M. Lingle Co.,* 487 S.W.2d 869, 871–72 (Mo.App. E.D.1972), or increase the amount of damages sought, *see Jew,* 126 S.W.3d at 398. To do so would subject the defendant to liability not contemplated by the petition. Here, because the petition supplied reasonable notice that Gerald sought redress for invasion of privacy, Penn–Star was not subject to additional liability or an uncontemplated claim.

"At most all that can be urged against the petition is that it was a defective statement of a good cause of action, and not an entire failure to state a cause of action." *Thomasson,* 116 S.W. at 1096. In the current circumstances, the defaulting party was apprised of the cause and was subject to no greater liability than the petition sought. The invasion of privacy judgment of the St. Louis court was not, therefore, void.

### Policy Exclusion for Assault and Battery, the Product of Nuisance

■ Green argues the Jackson County court also erred in finding the injury suffered by Gerald was not covered by the insurance policy. The insurance policy in question provided coverage for sums that Landlord and Club became "legally obligated to pay as damages because of 'bodily injury' or 'property damage.'" Damages arising from a nuisance cause of action were generally insured. The policy, however, excluded from coverage:

[D]amages resulting from assault and battery [10] or physical altercations that occur, in, on, near or away from the insured's premises;

1) Whether or not caused by, at the instigation of or with the direct or indirect involvement of the insured, the insured's employees, patrons or other person in, on, near or away from insured's premises, or

2) Whether or not caused by or arising out of the insured's failure to properly supervise or keep the insured's premises in a safe condition, or

3) Whether or not caused by or arising out of any insured's act or omission in

---

10. The term "assault and battery" is not defined by the policy. Webster's Third New International Dictionary 187 (1993) defines a battery as a "willful, angry and violent, or negligent unlawful touching of another's person or clothes." Green does not currently argue that the shooting of Gerald was not an assault and battery under the exclusion.

connection with the prevention or suppression of the assault and battery or physical altercation, including, but not limited to, negligent hiring, training, and/or supervision.

The St. Louis court found that Club and Landlord negligently maintained a nuisance and this nuisance directly contributed to Gerald's death. Penn–Star does not dispute this finding. Penn–Star does, however, argue that, while there may have been a pre-existing nuisance, the direct cause of Gerald's death was an assault and battery and was, accordingly, not covered by the policy.

 Several rules of construction guide our interpretation of insurance policies. We interpret the language of policies to mean "what a reasonable layperson in the position of the insured would have thought they meant." *Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.*, 992 S.W.2d 308, 316 (Mo.App. E.D.1999). Furthermore, if an insurance policy is unambiguous, it must be enforced as written. *Hempen v. State Farm Mut. Auto. Ins. Co.*, 687 S.W.2d 894, 894 (Mo. banc 1985). We will deem an insurance policy ambiguous when the language of the policy is susceptible to multiple interpretations and its meaning is uncertain. *Acceptance Ins. Co. v. Winning Concepts of Westport, Inc.*, 842 S.W.2d 206, 207 (Mo.App. W.D.1992). Ambiguity in an insurance policy in determining the applicability of a coverage exclusion will be construed in favor of the insured, in favor of coverage. *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210 (Mo. banc 1992).

Before us now are two discreet issues: first, is the language of the Assault and Battery exclusion ambiguous standing alone? Second, assuming the exclusion unambiguously excludes the current injury from coverage, what is the effect of the absence of language excluding coverage "regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage" as is present in the War or Terrorism exclusion of the policy?

 Green argues the language of the exclusion itself is, at least, ambiguous. While it excepts assault and battery from coverage, it generally insures against damages arising out of nuisance. According to Green, it is not clear if damages caused by a nuisance are covered when the nuisance manifests itself as an assault and battery. She argues the nuisance was a separate and independent actionable tort from the assault and battery and, thus, the "concurrent cause doctrine" should apply. While a minority approach,[11] the concurrent cause doctrine operates to interpret an ambiguous insurance policy to provide coverage where an injury is caused by both an insured and an excluded risk. "[W]here an insured risk and an excluded risk constitute concurrent proximate causes of an accident, a liability insurer is liable so long as one of the causes is covered by the policy." *Braxton v. U.S. Fire Ins. Co.*, 651 S.W.2d 616, 619 (Mo.App. E.D.1983). *See also Bowan v. Gen. Sec. Indem. Co. of Ariz.*, 174 S.W.3d 1, 7 (Mo.App. E.D. 2005).[12] Even if the concurrent cause doc-

---

11. *See* Kimberly J Winbush, Annotation, *Validity, Construction and Effect of Assault and Battery Exclusion in Liability Insurance Policy at Issue*, 44 A.L.R.5th 91 (1996) (noting that most courts have found "that all claims, whether rooted in the actual assault and battery, or couched in negligence language, that arise from an assault and battery fall within the parameters of an assault and battery exclusion.").

12. The Jackson County court determined that "Missouri has rejected the 'concurrent cause doctrine'" without citing authority. Penn–Star makes the same assertion without citation to authority. *But see Gulf Ins. Co. v.*

trine is the law of this jurisdiction, it is only applicable where the language of the policy is ambiguous. *See generally Am. States Ins. Co. v. Porterfield,* 844 S.W.2d 13 (Mo.App. W.D.1992). Such is not the case.

■■■■ We find the language of the Assault and Battery clause unambiguous. A reasonable person reviewing the exclusion clause would understand it to cover this sort of injury. The exclusion clause reads,

> [T]his policy will not provide coverage ... for: 'Bodily Injury' ... or any other damages resulting from assault and battery or physical altercations that occur in, on, near or away from the insured's premises, ... [w]hether or not caused by or arising out of the insured's failure to properly supervise or keep the insured's premises in a safe condition.

While the word "nuisance" was not used, the harm described in the exclusion was a battery or physical altercation that occurred near the nightclub and was caused by Club and Landlord's failure to maintain the nightclub in a safe condition. The language of the policy answers any question concerning the meaning of the exclusion. There is no ambiguity in this section of the policy.[13]

■■■■ We can now turn to the question of determining the effect of the absence of limiting language in the Assault and Battery exclusion and its presence in the War or Terror exclusion. When interpreting an insurance policy, the guide is that " '[w]here a term is used in one phrase of a policy, its absence in another phrase is significant.' " *Reese v. U.S. Fire Ins. Co.,* 173 S.W.3d 287, 299 (Mo.App. W.D.2005) (citation omitted). *See also Otto v. Young,* 227 Mo. 193, 127 S.W. 9 (Mo.1910). The policy contained an exclusion for damages resulting from war or terrorism. That exclusion stated, "This insurance does not apply to: ... War ... Warlike action ... Insurrection, rebellion, revolution, usurped power ... 'Terrorism' ... *regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage."* (Emphasis added.)[14]

*Noble Broad.,* WD 50876, 50948, 1996 WL 56636 (Mo.App. W.D. Feb.13, 1996) (stating, "[u]nder the 'concurrent cause' doctrine, coverage exists when an excluded cause and a non-excluded cause operate concurrently to cause an injury if the non-excluded cause was a substantial factor in producing damage or injury. Although the Eastern District has accepted the concurrent cause doctrine in this context in *Braxton,* this court has never recognized it. We leave that issue for a future court to resolve." (internal citation omitted)), *vacated,* 936 S.W.2d 810 (Mo. banc 1997).

13. Green also argues the current case is distinguishable from those where a negligent act resulted in an assault and battery because the nuisance existed prior to and was, therefore, an actionable cause prior to the suffering of the ultimate damage. *See Capitol Indem. Corp. v. Callis,* 963 S.W.2d 247 (Mo.App. W.D.1997); *Acceptance Ins. Co. v. Winning Concepts of Westport, Inc.,* 842 S.W.2d 206 (Mo.App. W.D.1992). While the nuisance did

exist prior to the harm, it was actionable by neither Green nor Gerald prior to the injury. "A public nuisance, unlike a private nuisance, does not necessarily involve an interference with the use and enjoyment of land, or an invasion of another's interest in the private use and enjoyment of land, but encompasses any unreasonable interference with a right common to the general public." 58 AM.JUR.2D *Nuisances* § 31 (2002). In order for an individual to bring a public nuisance action prior to the accumulation of damages, that person must suffer an injury beyond that of the public at large. A "private person cannot maintain an injunction suit to restrain a public nuisance, unless he shows a special injury to himself, differing in kind and not merely in degree from the general injury to the public." *Lademan v. Lamb Constr. Co.,* 297 S.W. 184, 186 (Mo.App.1927).

14. We denominate this clause as the "concurrent cause clause" for the remainder of the opinion.

This clause would extend the exclusion to situations where the negligence of Club or Landlord caused or augmented the damage from a terrorist attack.

Green argues that, even if the language of the Assault and Battery exclusion is clear, the use of the concurrent cause clause in the War or Terrorism exclusion and its absence in the Assault and Battery exclusion generates ambiguity. However, even after considering the absence of the concurrent cause clause in the Assault and Battery exclusion, we still find no ambiguity in the policy. The "whether or not" clauses in the Assault and Battery exclusion are analogous to the "concurrent cause" clause of the War or Terrorism exclusion. The "whether or not" clauses extend the Assault and Battery exclusion regardless of who committed the battery if a dangerous condition caused the battery or if the nuisance was the result of negligent hiring or supervision. Both the "concurrent cause" clause and the "whether or not" clauses operate to extend the exclusion to situations where the liability is generated by both the primary excluded cause (terrorism or battery) and by secondary causes (any concurrent contributing act or an enumerated contributing act such as a failure to maintain the premises in a safe condition). The extending language found in the Assault and Battery exclusion need not be identical to that found in the War or Terrorism exclusion. Rather, the Assault and Battery exclusion employs its own extension in the "whether or not" clauses. We, therefore, find the presence of the "concurrent cause" clause in the War or Terrorism exclusion does not make the Assault and Battery exclusion ambiguous.

## Conclusion

The Jackson County court erred when it ruled that the St. Louis County court's judgment for invasion of privacy was void. We grant relief on Green's first point and remand for further proceedings consistent with this opinion. We affirm the remainder of the judgment.

SPINDEN and HOLLIGER, JJ., concur.