

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| DOMINIC MESSINA, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD82313 |
| | ) | |
| SHELTER INSURANCE COMPANY, | ) | FILED: October 8, 2019 |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County**
**The Honorable Mary F. Weir, Judge**

**Before Division One: Cynthia L. Martin, P.J. and**
**Alok Ahuja and Anthony Rex Gabbert, JJ.**

Dominic Messina insured his home with Shelter Mutual Insurance Company. The brick veneer on an exterior wall of Messina's home collapsed, and he filed a property damage claim with Shelter. After Shelter denied the claim, Messina sued the insurer for breach of contract in the Circuit Court of Jackson County. The circuit court granted Shelter's motion for summary judgment, and Messina appeals. Messina has conceded that one of the causes of the wall collapse was explicitly excluded from coverage under Shelter's policy. Because the policy specifies that it does not provide coverage if _any_ cause of loss or damage is excluded, Messina's concession forecloses coverage for the wall collapse. We accordingly affirm the circuit court's grant of summary judgment to Shelter.

## Factual Background

Messina has owned and lived at the residence located at 501 Olive Street in Kansas City since approximately 1999. Messina acknowledged that the brick

veneer on the south side of his home "was bulging out away from the wall . . . since he bought the house."

In 2016, Shelter issued a homeowner's insurance policy covering Messina's residence for the policy period of May 29, 2016, to May 29, 2017.

On December 25, 2016, Messina returned home to discover that most of the brick veneer on the south side of his residence had collapsed into his driveway. A few weeks later, Messina contacted Mark Towner, a professional engineer, to determine the cause of the collapse. At his deposition, Towner testified he found pre-existing weakness and deterioration in the mortar of the south wall, which had developed over a period of years. In addition, Towner testified that metal connectors which were intended to hold the brick veneer to the wood sheathing behind it had corroded and rusted. Towner testified that the brick veneer wall collapsed as a result of a combination of factors, including: deterioration of the mortar; corrosion and rust of the metal nails holding the brick veneer to the wood sheathing; and the force of a wind suction or wind velocity event which occurred on the day of the collapse. Towner conceded that, but for the long-term deterioration of the mortar, and the corrosion or rusting of the metal connectors, the wind would not have caused the brick veneer to collapse on its own.

After Messina filed a claim for loss, Shelter hired its own engineer, Kevin Kirchmer, to inspect the collapsed wall. In his report, Kirchmer attributed the collapse of the brick veneer to long-term expansion and contraction of the wood sheathing, long-term corrosion of the brick nails, and a lack of maintenance. Kirchmer specifically concluded that the wall did not collapse because of the force of the wind.

Shelter denied Messina's insurance claim. He then filed a breach of contract action against Shelter, seeking to recover the cost of the repair and replacement of

2

the brick veneer. Messina alleged that the policy provided coverage because a wind event caused the collapse, and was a covered cause of loss.

Shelter moved for summary judgment on the basis that the uncontroverted facts showed that Messina's claim did not involve an "accidental direct physical loss" covered by the policy, because the deterioration and bowing of the brick veneer had not occurred abruptly. Shelter also contended that, even if the loss fell within the definition of an "accidental direct physical loss," coverage was defeated by the policy's exclusions.

The circuit court granted Shelter's motion for summary judgment. Messina appeals.

## Standard of Review

"Summary judgment shall be entered if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Wilmes v. Consumers Oil Co. of Maryville*, 473 S.W.3d 705, 714 (Mo. App. W.D. 2015) (citing Rule 74.04(c)(6); internal quotation marks omitted). "This Court reviews a grant of summary judgment *de novo*." *Gall v. Steele*, 547 S.W.3d 564, 567 (Mo. 2018) (citing *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. 1993)). On appeal, "[w]e will affirm a grant of summary judgment if the decision is correct under any theory supported by the record developed below and presented on appeal." *Medley v. Valentine Redford Commc'ns, Inc.*, 173 S.W.3d 315, 319 (Mo. App. W.D. 2005) (citation and internal quotation marks omitted). The Court reviews the record "in the light most favorable to the party against whom judgment was entered," and gives the non-movant "the benefit of all reasonable inferences from the record." *Id.* (citing *ITT Commercial*, 854 S.W.3d at 376).

3

## Analysis

Messina argues that the circuit court erred in granting summary judgment to Shelter. In his first Point, he argues that a genuine factual issue exists as to whether a wind velocity or wind suction event caused the collapse of the wall, and therefore whether the collapse was caused by an abrupt event and could be considered an "accidental direct physical loss." In his second Point, Messina argues that the Shelter policy's exclusions cannot defeat coverage, because a genuine issue of fact exists as to whether the wall's pre-existing, deteriorated condition was known or visible to him prior to the collapse. Because it is dispositive of this appeal, we address only Messina's second Point.[1]

"The general rule in interpreting insurance contracts is to give the language of the policy its plain meaning." *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 554 (Mo. 2014) (citing *Gaven v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 720 (Mo. 2008)). Any ambiguity in the language of the insurance policy is "resolve[d] . . . against the insurer-drafter," while unambiguous policy language "must be enforced as written." *Id.* (citations omitted). "An ambiguity exists only if a phrase is reasonably open to different constructions." *Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins.*, 531 S.W.3d 508, 511 (Mo. 2017) (citation and internal quotation marks omitted).

While the *insured* bears the burden of proving coverage under an insurance policy, the *insurer* bears the burden of showing that a policy exclusion precludes coverage for a particular loss. *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 80 (Mo. App. W.D. 2005). Because "[a]n insured purchases coverage for

---

[1]    Shelter argues that we should dismiss Messina's appeal because his brief fails to comply with the briefing requirements of Rule 84.04. Although "[t]he failure to comply substantially with Rule 84.04 preserves nothing for review and constitutes grounds for dismissing the appeal," "we prefer to resolve appeals on their merits, especially when we are able to discern the gist of the appellant's allegations of error." *Bartsch v. BMC Farms, LLC*, 573 S.W.3d 737, 742 (Mo. App. W.D. 2019) (citations omitted). In this case, because Messina's appellate arguments are fully intelligible despite any briefing deficiencies, we address the merits of his claims.

4

protection," we will interpret the policy to "grant coverage rather than defeat it"; accordingly, "[w]e strictly construe exclusion clauses against an insurer." *Id.* at 86 (citations omitted). Although we strictly construe policy exclusions, the Missouri Supreme Court has emphasized that "[d]efinitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable." *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. 2007); *accord Dutton v. Am. Fam. Mut. Ins. Co.*, 454 S.W.3d 319, 324 (Mo. 2015).

The homeowner's insurance policy Shelter issued to Messina provides insurance coverage for "accidental direct physical loss" to Messina's residence, "except for those perils and losses [that are] excluded." The policy defines "accidental direct physical loss" as "actual physical damage to . . . a part of the covered property which is caused by an accident." In turn, the policy defines "accident" as:

> an action or occurrence, or a series of actions or occurrences that:
>
> (a)   Started abruptly;
> (b)   During the policy period; and
> (c)   Directly resulted in . . . property damage.

The policy excludes coverage where certain conditions or events cause the loss or damage. The policy states:

> EXCLUSIONS APPLICABLE TO COVERAGES A & B
>
> **We** do not cover any loss or damage if it would not have occurred in the absence of any event or condition listed below. That loss or damage is excluded from coverage regardless of:
>
> (a)   The proximate cause of that event or condition;
> (b)   The fact that other events or conditions, which are not excluded, caused the loss or damage;
> (c)   The fact that other events or conditions, which are not excluded, contributed to the loss or damage;

5

>     (d)     The sequence of the events or conditions that caused the
>             loss or damages . . . .
>
>     . . . .
>
>     9.      Wear and tear; marring or scratching; deterioration;
> inherent vice; latent defect; mechanical breakdown; . . . rust; mold;
> mildew; fungus; spores; wet or dry rot; contamination . . . .

Messina has conceded the facts necessary to trigger the application of Exclusion 9. Messina's expert engineer, Mark Towner, testified at his deposition that the mortar holding the brick veneer together had deteriorated over an extended period of time. Towner also testified that the metal connectors or nails which anchored the brick veneer to the underlying wood sheathing had corroded and rusted. Critically, Towner conceded that if the mortar had not deteriorated, and if the metal connectors had not rusted or corroded, the brick veneer wall would _not_ have collapsed simply due to the wind velocity or wind suction event which occurred on December 25, 2016. Messina acknowledges Towner's testimony in his opening Brief:

> Mr. Towner conceded that if the mortar in the brick veneer had not
> been deteriorated in [*sic*] and the metal connectors which were to hold
> the brick veneer had not been rusted or corroded, this wind suction
> velocity event would not have been able to pull the veneer off the
> house. . . . So, admittedly, Mr. Towner stated that the wall's brick
> veneer was weak but the cause of the fall was the addition of the wind
> velocity and wind suction event.

Thus, Messina has conceded that the deterioration, corrosion and rust of the wall's components were _a_ cause of the wall's collapse, even if other circumstances acted together with the pre-existing deterioration, corrosion and rust to cause the collapse.

As a general proposition, Missouri law holds that "where an insured risk and an excluded risk constitute concurrent proximate causes of an accident, a liability insurer is liable as long as one of the causes is covered by the policy." *Bowan ex rel.*

6

*Bowan v. Gen. Sec. Indemn. Co. of Ariz.*, 174 S.W.3d 1, 5 (Mo. App. E.D. 2005) (citation omitted); *see also, e.g.*, *Am. Fam. Mut. Ins. Co. v. Parnell*, 478 S.W.3d 489, 492 (Mo. App. W.D. 2015) (under the concurrent proximate cause rule, "'"an insurance policy will be construed to provide coverage where an injury was proximately caused by two events—even if one of these events was subject to an exclusion clause—if the differing allegations of causation are independent and distinct"'"; quoting *Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 347 (Mo. 2015)).[2]

An insurance policy can be written to exclude the operation of this concurrent proximate causation principle, however. "Courts in . . . Missouri uniformly agree that unambiguous provisions that preclude coverage for losses caused directly or indirectly by an excluded event 'regardless of any other cause or event that contributes concurrently or in any sequence to the loss' are enforceable." *Maxus Realty Trust, Inc. v. RSUI Indem. Co.*, No. 06-0750-CV-W-ODS, 2007 WL 4468697, at *2 (W.D. Mo. Dec. 17, 2007) (citing *Pakmark Corp. v. Liberty Mut. Ins. Co.*, 943 S.W.2d 256 (Mo. App. E.D. 1997); other citation omitted). Under such an "anti-concurrent causation" provision, "an exclusion is an exclusion regardless of any other cause that contributes to the loss, either concurrently or in any sequence to the loss." *Pakmark*, 943 S.W.2d at 261; *accord Rodin v. State Farm Fire & Cas. Co.*, 844 S.W.2d 537, 539 (Mo. App. E.D. 1992) (under an anti-concurrent cause provision, a loss was subject to the policy's exclusion of "water damage" "whether

---

[2]    In *Green v. Penn-Am. Ins. Co.*, 242 S.W.3d 374 (Mo. App. W.D. 2007), *abrogated on other grounds*, *A.D.D. v. PLE Enters., Inc.*, 412 S.W.3d 270 (Mo. App. W.D. 2013), this Court suggested that the concurrent proximate cause rule only applies where the language of the relevant insurance policy is ambiguous. 242 S.W.3d at 383. Other decisions suggest that the concurrent proximate causation rule applies to all insurance policies, and reject *Green*'s limitation of the doctrine. *See Adams v. Certain Underwriters at Lloyd's of London*, No. ED106121, 2019 WL 3103767, at *11 (Mo. App. E.D. July 16, 2019). Whether the rule applies generally, or only to ambiguous insurance policies, is irrelevant here, since Shelter's policy unambiguously negates application of concurrent causation principles.

the loss was caused by pure water or by the pollutants contained in the sewage [a covered cause of loss] acting concurrently with water"); *cf. Toumayan v. State Farm Gen. Ins. Co.*, 970 S.W.2d 822, 826 (Mo. App. E.D. 1998) (finding that anti-concurrent cause provision "is unambiguous and prevents application of the [efficient] proximate cause doctrine"); *TNT Speed & Sport Ctr., Inc. v. Am. States Ins. Co.*, 114 F.3d 731, 733 (8th Cir. 1997) (Missouri law; anti-concurrent cause provision "reflects an intent to contract out of application of the efficient proximate cause doctrine").

Here, Shelter's policy unambiguously provides that coverage is excluded if the loss would not have occurred in the absence of a listed condition or event. The excluded conditions or events include "wear and tear," "deterioration," and "rust." The policy provides no coverage if one of the listed conditions or events is a "but for" cause of the loss or damage, "regardless of . . . the fact that other events or conditions, which are not excluded, caused the loss or damage . . . [or] contributed to the loss or damage," in any sequence.

The testimony of Messina's expert Towner, and Messina's briefing on appeal, concedes that the brick veneer would not have collapsed but for the pre-existing deterioration of the mortar, and the corrosion and rust of the nails holding the veneer wall to the underlying sheathing. This concession defeats coverage under Shelter's policy, "regardless of . . . the fact that other events or conditions, which are not excluded, . . . contributed to the loss or damage." Without addressing any other basis upon which Shelter moved for summary judgment, the operation of Exclusion 9, standing alone, justifies the circuit court's grant of summary judgment to Shelter.

Messina argues that Exclusion 9 should not defeat coverage because the "pre-existing condition[s]" which trigger Exclusion 9 "were not known to or visible to the insured" prior to the wall's collapse. Messina cites no legal authority, however, to support his argument that Exclusion 9 is limited to conditions which were known

8

to, or discoverable by, the insured prior to a loss.  We would be justified in rejecting Messina's argument based solely on his failure to cite supporting legal authority.  *See, e.g.*, *Matter of Williams*, 573 S.W.3d 106, 118–19 (Mo. App. W.D. 2019) ("'[A] reviewing court is justified in considering a point abandoned if there is no authority or no explanation as to why authority is not available.'" (citation omitted)).  We also note, however, that Messina's argument is contrary to well-established interpretive principles applicable to insurance policies.  "It is well settled that a court will not add language to an insurance policy." *Cowin v. Shelter Mut. Ins. Co.*, 460 S.W.3d 76, 81 (Mo. App. W.D. 2015) (citing *Burns v. Smith*, 303 S.W.3d 505, 511 (Mo. 2010)).  "A court's function is to construe, not make, insurance contracts." *Id.* (citation omitted).  "[W]here, as here, the policy's language is not ambiguous, the policy is enforced as written." *Id.* (citation omitted).  Because the policy does not limit Exclusion 9 to conditions which an insured knew, or could have discovered, before a loss, we will not read such a limitation into the policy.  Accordingly, any factual dispute concerning Messina's knowledge of the deteriorated condition of the brick veneer, or concerning the discoverability of that deterioration, does not prevent the entry of summary judgment, because it is not a *material* issue.  *See, e.g.*, *Exec. Bd. of the Mo. Baptist Convention v. Mo. Baptist Found.*, 497 S.W.3d 785, 800 (Mo. App. W.D. 2016) ("Only those factual disputes that might affect the outcome of the case under the applicable law are considered material for purposes of summary judgment."; citation and internal quotation marks omitted).[3]

---

[3]     Messina's briefing also refers to "the reasonable expectation of an insurance policy doctrine."  He offers no explanation as to how this abstract legal principle applies to the facts of this case.  Because we will not act as Messina's advocate, we reject his reliance on this doctrine without further discussion.  *See In re H.B.*, 165 S.W.3d 578, 583 (Mo. App. S.D. 2005) (argument fails to comply with Rule 84.04 where it fails to explain how cited legal principles interact with the facts in the case at hand).

**Conclusion**

The judgment of the circuit court is affirmed.

_____
Alok Ahuja, Judge

All concur.

10