## Joe AGNELLO and Elizabeth Agnello, Respondents,

v.

## Kent WALKER d/b/a Hardwood Productions, Appellant.

### No. WD 71013.

Missouri Court of Appeals, Western District.

March 23, 2010.

As Modified April 27, 2010.

Tamara Putnam, Kansas City, MO, for Appellant.

John L. Mullen and Pamela J. Welch, Kansas City, MO, for Respondents.

Before Division III: JAMES EDWARD WELSH, Presiding Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.

MARK D. PFEIFFER, Judge.

Joe and Elizabeth Agnello (Agnello) filed suit against Kent Walker d/b/a Hardwood Productions (Walker) in the Circuit Court of Jackson County (trial court) alleging that Walker was liable to them under theories of breach of contract and fraud related to Walker's construction and installation of custom cabinetry in their home. Walker failed to respond to the Agnello petition in a timely manner and the trial court entered default judgment in favor of Agnello after conducting an evi-

dentiary hearing on the issue of damages. Walker now appeals the trial court's denial of his motion to set aside that default judgment and argues that the default judgment is both erroneous and not supported by substantial evidence. On appeal, Walker raises three points. In his first point, Walker argues that the trial court abused its discretion in not setting aside the default judgment because Walker claims that he demonstrated both a meritorious defense to the Agnello petition and also showed good cause as to why he failed to respond to the petition. In his second point on appeal, Walker argues that the default judgment erroneously awards damages other than that which was demanded in the petition and was not otherwise supported by substantial evidence. In his final point, Walker argues that the trial court abused its discretion in refusing to reconsider its order denying the motion to set aside the default judgment because Walker claims he produced additional evidence of good cause that the trial court refused to consider. We affirm in part and reverse in part.

## Factual Background

■ Walker was hired by Agnello to construct and install custom cabinetry in the Agnello home. Pursuant to the Agnello–Walker contract,[1] the cabinets were to be constructed using clear alder wood. Walker constructed and installed cabinetry in the Agnello home and received payment from Agnello in the amount of approximately $49,000. After paying Walker, Agnello encountered problems with the cabinets sagging and tilting. Agnello consulted with another contractor who informed them that where the cabinetry was painted, the cabinets had been constructed with poplar wood, a cheaper alternative to clear alder wood. The contractor provided them with an estimate of $53,300 to remove and replace the defective cabinets. Agnello hired attorney John Mullen (Mullen). Mullen sent a letter of representation to Walker. Upon receiving the letter, Walker hired attorney Justin Meeks (Meeks), who notified Mullen that he was representing Walker and requested that all further contact and correspondence be directed to him. Mullen filed suit on behalf of Agnello on August 8, 2008, but did not send a courtesy copy of the petition to Meeks.[2] Walker was personally served on August 27, 2008, and while there is no competent evidence on the topic in the record before us, Walker argues that between he and Meeks, they mishandled the internal office filing of the petition and mistakenly failed to file a responsive pleading as required by law. Thirty-six days after service of process upon Walker, Agnello filed a motion for interlocutory order of default and judgment on October 2, 2008. There being no requirement that a party in default for failure to appear be provided

---

1. The petition and testimony at the default judgment hearing refers to a contract and various terms of the contract, but no written document purporting to be the contract between the parties was referenced in or attached to the petition, nor was such a written document discussed or otherwise offered into evidence at the default judgment evidentiary hearing. Thus, either the agreement between the parties was a verbal contract or only certain of the written terms were testified to at the evidentiary hearing.

2. Mullen later claimed that he ordinarily would have extended the courtesy of sending a copy of the petition to Meeks, but he felt like Meeks and his client had ignored good-faith attempts at settlement by Agnello, so he chose not to send a courtesy copy of the pleading to Meeks. Conversely, no rule of civil procedure requires an attorney to provide such notice of the filing of a lawsuit to an attorney that is known to represent the defendant before the petition is filed.

notice of the filing of motions or written notice of hearings,[3] Agnello did not provide notice of the motion for interlocutory order of default and judgment, nor did Agnello provide notice of the October 15, 2008 default judgment evidentiary hearing.[4]

In their petition, Agnello asserted five counts, alleging breach of contract, fraud, negligent misrepresentation, intentional misrepresentation, and violation of the Missouri Merchandising Practices Act (MMPA), RSMo 407.025.[5] Counts I, II, and V each alleged identical actual or compensatory damages, to-wit:[6]

A. Cost to remove, repair and replace the defective cabinets which same will exceed $50,000;

B. Loss of use of plaintiffs' kitchen while repairs are undertaken;

C. Attorney's fees incurred in this action; and

D. Prejudgment and post judgment interest as permitted by law.

At the default judgment hearing, Elizabeth Agnello testified and evidence was presented that the cost of removing and replacing the defective Walker-constructed cabinetry would be $53,300 and that the entire removal and replacement of all of the Walker cabinetry was required because repair was not a reasonable option. Though not pled as damages in the petition, Elizabeth Agnello also testified that Walker was also paid to construct and install pocket doors with a TV swivel, appliance cabinetry, painting labor, and staining the kitchen island, but Walker failed to do so and Agnello was thereby additionally damaged. No evidence was presented that the contract between the parties contained any sort of agreement authorizing a prevailing party to receive attorney's fees from the other party. However, Agnello and Agnello's trial counsel requested attorney's fees in relationship to Count V, the MMPA count, and represented that a fair and reasonable award of attorney's fees for work performed by Agnello's attorneys should be $25,000. Finally, Agnello requested punitive damages of $100,000 to be assessed against Walker on Count II of the petition.[7]

---

3. *See* Rule 43.01(a); *Doe v. Hamilton*, 202 S.W.3d 621, 624 (Mo.App. E.D.2006) (holding that once a defendant is served, he is charged with notice of all subsequent proceedings in the case and a defendant in default does not have the right to notice of default proceedings). Conversely, a party not in default who does not receive notice of a trial setting is entitled to a new trial or to have the judgment set aside. *Midwest Grain & Barge Co. v. Poeppelmeyer*, 295 S.W.3d 211, 213 (Mo.App. E.D. 2009); *Breckenridge Material Co. v. Enloe*, 194 S.W.3d 915, 921 (Mo.App. E.D.2006). Hence, it is the default status that dictates the notice requirement issue.

4. Respondents do note at pages 19–20 of their brief that the trial court correctly stated, "while common sense or common courtesy might dictate that the parties be given notices of motions to seek default judgment, the law doesn't require it. There's no requirement they be notified of the hearing for establishing the entry of default judgment." This court is mindful of the maxim that you should do unto others as you would like others to do unto you and our preference is that attorneys extend professional courtesies to one another. But, our preference is only that—a preference. Unless and until the law changes on this topic, we cannot require the sort of "common courtesy" that the trial court discussed with the parties below.

5. All statutory references are to RSMo 2000 unless otherwise indicated.

6. At the default judgment evidentiary hearing, Agnello voluntarily dismissed Counts III and IV of the petition without prejudice.

7. Count II of the Agnello petition did, in fact, request punitive damages, but specifically requested $10,000, not $100,000 in punitive damage relief.

At the default judgment hearing, counsel for Agnello[8] submitted a proposed judgment for the trial court, including handwritten notations for additional damages that were added by counsel for Agnello at the default judgment hearing. Counsel for Agnello advised the court that she had made handwritten corrections to the proposed judgment based upon documents she had received that morning. The handwritten modifications altered the actual or compensatory damages awarded for Count II and Count V of the Agnello petition. The proposed judgment was accepted and entered by the trial court immediately following the presentation of evidence at the default judgment hearing. The default judgment awarded damages as follows:

A. Count I—compensatory damages of $53,300;

B. Count II—compensatory damages of $6,089 and punitive damages of $100,000; and

C. Count V—compensatory damages of $6,089 and reasonable attorney's fees of $25,000.

Shortly thereafter, Walker received notice of the entry of default judgment. Walker retained new counsel, Tamara Putnam, for the purpose of attempting to convince the trial court to set aside the default judgment. Walker filed a motion to set aside the default judgment on November 14, 2008, *arguing* that Walker had good cause for failing to timely respond to the petition and that he had meritorious defenses to the petition. The motion was supported by signed affidavits from both Walker and his wife, Diana, also an employee of his woodworking business. The affidavits addressed the topic of meritorious defenses but failed to address the topic of the facts constituting good cause for failing to timely respond to the petition. No other affidavits or evidence were submitted to the trial court in support of the motion to set aside the default judgment. After a hearing on March 24, 2009, at which both sides made arguments but where no additional evidence was presented, the trial court entered an order on April 1, 2009, denying the motion to set aside for the express reason that Walker had failed to meet his evidentiary burden to show good cause for setting aside the default judgment.

Walker responded by filing a motion to reconsider and motion for relief under Rule 74.06, *arguing* that the failure to timely respond to the petition was due to an internal filing error on the part of Walker's former attorney's office. Walker even attached a hearsay letter from Walker's former attorney. But, Walker failed to provide any additional affidavit or evidentiary support for his motion to reconsider and motion for relief under Rule 74.06. The trial court denied the motion without a hearing on May 7, 2009. This appeal timely followed.

## Denial of Motion to Set Aside Default Judgment

■ Walker first claims that the trial court erred in failing to set aside the default judgment in response to either the motion to set aside default judgment pursuant to Rule 74.05(d) or the motion to reconsider and for relief under Rule 74.06(b). We disagree.

■ A motion to set aside a default judgment is governed by Rule 74.05(d), which provides that a default judgment may be set aside "[u]pon motion stating

8. Respondents were represented at the hearing by Mullen's law firm colleague, attorney Pamela Welch.

facts constituting a meritorious defense *and* for good cause shown." (Emphasis added.) The trial court is vested with discretion to rule upon a motion to set aside a default judgment and we will not disturb a trial court's ruling under Rule 74.05(d) absent an abuse of discretion. *Brungard v. Risky's Inc.*, 240 S.W.3d 685, 688 (Mo. banc 2007). However, it is a well-established principle of Missouri law that our courts disfavor default judgment and prefer that cases be decided on the underlying merits of the case. *Id.* at 687–88. Consequently, a trial court has broader discretion in granting a motion to set aside a default judgment than in overruling such a motion. *In re Marriage of Callahan*, 277 S.W.3d 643, 644 (Mo. banc 2009); *Distribution Transp. Servs., Inc. v. Salihovic*, 2 S.W.3d 822, 823–24 (Mo.App. E.D.1999). Conversely, a motion to set aside a default judgment is not a self-proving motion. *Gorzel v. Orlamander*, 352 S.W.2d 675, 678 (Mo.1961); *First Cmty. Bank v. Hubbell Power Sys., Inc.*, 298 S.W.3d 534, 540 (Mo.App. S.D.2009); *Jew v. Home Depot USA, Inc.*, 126 S.W.3d 394, 396 (Mo.App. E.D.2004). The motion must itself be verified or otherwise be supported by sworn testimony or affidavit testimony. *Gorzel*, 352 S.W.2d at 678; *Jew*, 126 S.W.3d at 396; *Hinton v. Proctor & Schwartz, Inc.*, 99 S.W.3d 454, 458 (Mo. App. E.D.2003). It is not sufficient to attach hearsay testimonial documentation in support of a motion to set aside default judgment as such testimony is unsworn and, thus, lacks the authenticity of sworn live testimony or affidavit testimony. *Hinton*, 99 S.W.3d at 458–59 (holding that a proffered affidavit in support of a motion to set aside default could not be considered by the trial court due to the fact that the purported affidavit was nothing more than an unsworn statement in that it lacked attestation by someone authorized to issue an oath); *Ward v. Cook United, Inc.*, 521 S.W.2d 461, 472 (Mo.App. W.D.1975) (rejecting a proffered affidavit on a motion to set aside default judgment that itself was nothing more than a statement based upon hearsay instead of personal knowledge, albeit a sworn statement); *Jew*, 126 S.W.3d at 397. The movant in a motion to set aside default judgment bears the evidentiary burden of proving entitlement to the relief requested. *Hinton*, 99 S.W.3d at 458; *In re Marriage of Pierce*, 867 S.W.2d 237, 238 (Mo.App. S.D.1993). Failure to establish either the "meritorious defense" element or the "good cause" element of a motion pursuant to Rule 74.05(d) is fatal to the motion. *McElroy v. Eagle Star Group, Inc.*, 156 S.W.3d 392, 406 n. 11 (Mo.App. W.D.2005).

Walker's motion to set aside default judgment was supported by the affidavit testimony of Walker and his wife. The affidavits contained appropriate sworn statements based upon personal knowledge and which offered meritorious defense arguments to the trial court. In fact, the trial court's denial order on the motion admits as much. However, the Walker affidavits did *not* proffer any testimony relating to the "good cause" element of Rule 74.05(d). Likewise, no other competent evidence on that topic was offered to the trial court in advance of the trial court's ruling on the motion to set aside default judgment. Instead, Walker's counsel *argued* the element of "good cause" without any sworn testimony or other competent evidence. Accordingly, the trial court did not abuse its discretion in concluding that Walker had failed to meet his burden of proving the "good cause" element required before a trial court can exercise its discretion to set aside a default judgment.

Our ruling today is not a refuge in procedural technicalities in order to avoid evaluating the merits of the case. On the

contrary, this case is an illustration for why we require that motions to set aside default judgments be verified or otherwise supported by sworn testimony. In Walker's motion to set aside default judgment, the *argument* of "good cause" was related to the notion that Walker's attorney had not properly received a copy of the Agnello petition. Conversely, in Walker's motion for relief from judgment filed after the trial court denied the motion to set aside default judgment, Walker *argued* "excusable neglect" in that he had, in fact, provided his attorney with a copy of the petition that was served upon him, but his attorney mishandled the internal office filing of the petition and failed to timely file a responsive pleading (although Walker also attached a hearsay letter from his previous attorney in support of his motion for relief from judgment in which the attorney claimed that he had received discovery, but had never received the petition, in the subject lawsuit). This paradox may have been avoided if the original motion to set aside default judgment had properly pled clear facts that were supported by sworn testimony on the topic. As this court has said before, the purpose of swearing a witness before providing competent testimony to a court is that the oath serves to quicken the conscience of the testifying witness before the witness testifies. *Bell v. Bell*, 292 S.W.3d 920, 925 (Mo.App. W.D. 2009) (citing *State v. Ward*, 242 S.W.3d 698, 703 (Mo. banc 2008)). At a minimum, sworn testimony would have provided the trial court and this court with a factual basis that would permit both courts to analyze Walker's substantive claims of "good cause" or "excusable neglect" on the merits. The motion's failure to comply with evidentiary requirements in support of the motion is fatal to the success of the motion at the trial court or this court.

■ This brings us to Walker's next argument relating to the trial court's refusal to set aside the default judgment. Within two weeks of the trial court's ruling denying the motion to set aside the default judgment, Walker filed a motion to reconsider the trial court's order refusing to set aside default judgment and an alternative motion for relief from the order under Rule 74.06(b).

■ Generally speaking, motions for reconsideration have no legal effect because the Missouri Rules of Civil Procedure do not recognize such a motion. *Hinton*, 99 S.W.3d at 459. We recognize that litigants will often attempt to use motions for reconsideration as a vehicle for re-arguing the motion or topic that was previously denied by the trial court, but we discourage any procedural motion practice that is not authorized by rule or law. Having said that, courts of appellate review in Missouri have engaged in substantive review of the arguments conveyed on motions for reconsideration by treating the motion as one for new trial, if timely filed. *Id.*; *Koerber v. Alendo Bldg. Co.*, 846 S.W.2d 729, 730 (Mo.App. E.D.1992).[9] Further, Walker's motion alternatively sought relief under Rule 74.06(b), which permits a party to seek relief from a judgment if that judgment was a result of, among other things, "excusable neglect." Rule 74.06(b) permits, but does not require, a trial court to set aside a final judgment where the movant is able to demonstrate

9. A Rule 74.05(d) motion to set aside default is treated as an independent proceeding if timely filed after the default judgment becomes final, *Brungard*, 240 S.W.3d at 687, such that a denial of such motion to set aside is independent of the underlying default judgment, and consequently, a party has thirty days within which to file a motion for new trial from this independent judgment by the trial court. Rule 78.04. Walker filed his motion for reconsideration within the time frame prescribed by Rule 78.04.

excusable neglect, but trial courts are vested with broad discretion when ruling on a motion to set aside a final judgment. *Cotleur v. Danziger*, 870 S.W.2d 234, 238 (Mo. banc 1994). Notably, and consistent with Rule 74.05 motions for relief, a Rule 74.06 motion to set aside a final judgment does not prove itself any more than does any other unverified motion or pleading. *Weidner v. Anderson*, 174 S.W.3d 672, 677 (Mo.App. S.D.2005). Stated another way, argument of counsel does not qualify as sworn and competent testimony and does not replace movant's burden of proof requirement to produce competent and sworn testimony or evidence.

Walker's motion for new trial (erroneously titled a motion for reconsideration) *argues* a new factual basis constituting "good cause" for setting aside the default judgment, and Walker's motion to set aside final judgment under Rule 74.06 *argues* that the same assertion of factual circumstances constituting "good cause" also constitutes "excusable neglect." Walker presents much case authority addressing the fact pattern that Walker *argues* in his dual-headed motion. Once again, however, Walker's *arguments* are not supported by competent evidence in the form of sworn testimony or verified motion. Instead, Walker attaches a hearsay letter from his former attorney as support for his *argument.* As stated previously, as a matter of law, unsworn hearsay testimony or documentation cannot serve as the evidence necessary to meet movant's burden of persuasion. As such, whether we look at Walker's motion as one for new trial or relief from a final judgment, the trial court did not abuse its discretion in denying the motion since Walker submitted *arguments* instead of competent evidence in support thereof.

### Alleged Erroneous Default Judgment

■■■■■■ We now turn to Walker's argument that the default judgment itself erroneously awarded damages in excess of the trial court's authority [10] or was not otherwise supported by substantial evidence. We note that Walker has properly sought to have the default judgment set aside by a Rule 74.05 motion to set aside default judgment, as discussed *infra*, before appealing the terms of the default judgment, as is required before appeal to this court. *Vonsmith v. Vonsmith*, 666 S.W.2d 424 (Mo. banc 1984); *Leonard v. Leonard*, 112 S.W.3d 30, 37 (Mo.App. W.D.2003) ("A default judgment is not appealable in the absence of a motion to set aside or vacate."). The default judgment is subject to review only by appeal from the trial court's judgment denying Walker's motion filed pursuant to Rule 74.05. *Leonard*, 112 S.W.3d at 37; *see also* 16 Steven Katz, Missouri Practice, *Civil Rules Practice* § 74.05(d)–4 (2nd ed.1998, Supp.2009).

■■■■■■ The default judgment was entered after the trial court heard evidence on Agnello's claims of damages and, thus, is a court-tried case subject to review by

---

**10.** Walker refers to the challenged conduct of the trial court interchangeably as exceeding the trial court's authority or jurisdiction, presumably subject matter jurisdiction. The distinction between lack of subject matter jurisdiction and lack of statutory authority to proceed is that the latter can be waived, whereas the former cannot. *McCracken v. Wal–Mart Stores E., L.P.*, 298 S.W.3d 473, 477 (Mo. banc 2009). Waiver is not an issue here as Walker has preserved the issues of the trial court lacking authority to enter the default judgment in the form as entered. Thus, the distinction between the trial court lacking authority as opposed to subject matter jurisdiction is one without a difference. Accordingly, we will treat Walker's default judgment arguments in this case as arguments based on lack of statutory authority in those aspects for which Walker claims that the trial court was without authority to act as it did.

this court under the standard announced in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). As such, we will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* The evidence relating to damages will be viewed in a light most favorable to the party whom the damages were awarded by the judgment. *Gateway Foam Insulators, Inc. v. Jokerst Paving & Contracting, Inc.*, 279 S.W.3d 179, 184 (Mo. banc 2009). However, questions of law relating to the authority of the trial court to enter default judgment are reviewed *de novo*. *Green v. Penn–Am. Ins. Co.*, 242 S.W.3d 374, 378 (Mo.App. W.D.2007). *See also State ex rel. Cravens v. Nixon*, 234 S.W.3d 442, 447 (Mo.App. W.D.2007) ("Interpreting a statute and determining whether it applies to a given set of facts are questions of law which this court reviews *de novo*.").

In the default judgment, the trial court awarded damages of $53,300 in favor of Agnello and against Walker "in accordance with Count I of Plaintiff's Petition for Damages." Count I alleged breach of contract. In particular, Count I states that the cabinets were to be made of clear alder wood and they were to be constructed and installed in a professional and workmanlike manner. Count I alleges that the cabinets were partially made of poplar wood instead of clear alder wood, were poorly installed, and were otherwise defective. Count I alleged that, due to Walker's breach of contract, Agnello had sustained damages as follows:

A. Cost to remove, repair and replace the defective cabinets which same will exceed $50,000;

B. Loss of use of plaintiffs' kitchen while repairs are undertaken;

C. Attorney's fees incurred in this action; and

D. Prejudgment and post judgment interest as permitted by law.

At the default evidentiary hearing on damages, Elizabeth Agnello testified that it was not possible to repair the shelves and, instead, that the shelves would have to be removed and replaced with new cabinetry and installed correctly. She testified that the cost to do so would be $53,300. Specifically, she testified:

[Elizabeth Agnello]: Originally I hired [the new contractor]—I was going to have them come in and try to correct the problems, and nobody will touch the work that's been done. They don't want their name associated with the poorly made cabinetry. . . . [B]asically we're going to keep the exact same layout, but it's new cabinetry and installed correctly. . . .

So, pursuant to Elizabeth Agnello's testimony, the damages sought and recoverable by the $53,300 bid from the new contractor were to remove the Walker-installed cabinetry, which included the defective poplar wood cabinetry, and replace that cabinetry with new clear alder wood cabinetry in the same layout as Walker was originally hired to do and for that cabinetry to be installed correctly.

Elizabeth Agnello submitted no further evidence of damages on Count I at the hearing and, in the proposed judgment submitted to the trial court and accepted by the trial court, she and her husband were awarded $53,300 on Count I of the petition. We conclude that substantial and competent evidence was submitted by Agnello to support the default judgment as to Count I and affirm the award of damages as to Count I in the default judgment.

Count II asserted the identical allegations from Count I, including an identi-

cal itemization of compensatory damages, and added a claim for punitive damages of $10,000 for Walker's fraudulent representation that he would install clear alder wood shelving when, in fact, he fraudulently concealed that he was partially using a cheaper alternative, poplar wood, for some of the cabinetry.

At the default evidentiary hearing, Agnello presented evidence that the difference in using clear alder wood instead of poplar wood was $1,743 and, due to Walker's fraudulent concealment of his use of poplar wood, Agnello was damaged in the amount of the difference in value of the two woods. However, Walker's breach of contract in failing to use clear alder wood and the resulting damages related to this breach were already alleged in Count I and compensated for in the damage award of $53,300 for Count I in the default judgment. As Agnello testified at the hearing, "repair" was not possible. Instead, the old shelving had to be "removed" and "replaced" with completely new shelving and that "removal and replacement" constituted the basis for the damages of $53,300 sought and awarded under Count I. Since Agnello will receive clear alder wood shelving as part of the new shelving installed by the new contractor, Agnello's damage award from Count I already compensates Agnello for the damage associated with Walker's failure to use clear alder wood. Agnello cannot recover in Count II what Agnello has already recovered in Agnello's award of damages under Count I. Thus, Agnello is not entitled to recover as compensatory damages in Count II the identical damages from Count I and, as such, is not entitled to recover damages in Count II for the $1,743 difference in value between clear alder wood and poplar wood.

There is no substantial evidence to support an additional award of damages for this $1,743 as there is no new evidence that this is a different damage than that already awarded under Count I in the default judgment. And, if it is the position of Agnello that this was a new damage not itemized by Agnello's pleading of Count I, then it is a new item of damage that was also not pled and itemized in Agnello's pleading of Count II as the compensatory damage itemizations of Counts I and II of the Agnello petition are identical. As discussed more fully *infra* herein, damages may not be awarded in a default judgment that are other than those pled in the petition, and the trial court is without authority to award such damages.

The remainder of the trial court's award of compensatory damages for Count II is an award of $340 for a pocket door with a TV swivel, $884 for additional appliance cabinetry, and $3,122 for cabinetry painting and kitchen island staining.[11] None of these claimed damages relate to the removal, repair, or replacement of cabinetry. Instead, these amounts relate to additional cabinetry work that Walker was hired to do, but simply did not do, according to Elizabeth Agnello's default hearing testimony. These compensatory damages were not pled as damages in any of the counts of the Agnello petition.

Section 511.160 states:

Whenever such interlocutory judgment [of default] shall be rendered for the plaintiff, the damages or other relief shall not be other or greater than that which he shall have demanded in the petition.

 Section 511.160 is designed to prevent a plaintiff from taking advantage

---

11. Combined with the $1,743 for the difference in cost of clear alder wood over poplar wood, these amounts not so coincidentally total $6,089, the amount of compensatory damages awarded in Count II by the default judgment.

of the defendant, even a defendant who is in default for failure to appear. *LaPresto v. LaPresto*, 308 S.W.2d 724, 728 (Mo. 1957); *Jew*, 126 S.W.3d at 398. Damages awarded on default must not be other or greater than the damages pled in the petition as originally filed and served on the defendant. *LaPresto*, 308 S.W.2d at 728; *Green*, 242 S.W.3d at 380; *Jew*, 126 S.W.3d at 398. The theory behind such a rule is that a defendant in default may be willing to permit the plaintiff to obtain the relief the petition asks for, but not willing to suffer the consequences of a default for other and further relief not pled in the original petition. *Jew*, 126 S.W.3d at 398. Furthermore, it is not sufficient for the plaintiff to argue that a petition's prayer for such other and further relief as the court deems just and proper justifies an award on default other or greater than originally pled. *Id.* And, Rule 55.33(b), which authorizes pleadings to be amended to conform to the evidence does not apply in default proceedings. *Id.*; *LaPresto*, 308 S.W.2d at 727; *Green*, 242 S.W.3d at 380. Missouri employs a pleading requirement commonly referred to as fact pleading, *Luethans v. Wash. Univ.*, 894 S.W.2d 169, 171 (Mo. banc 1995) (abrogated on other grounds by *Keveney v. Missouri Military Academy*, 304 S.W.3d 98 (Mo. banc 2010)), and as compared to the federal notice pleading counterpart, "fact pleading demands a relatively rigorous level of factual detail." *Green*, 242 S.W.3d at 379; *State ex rel. Papin Builders, Inc. v. Litz*, 734 S.W.2d 853, 858 (Mo.App. E.D.1987) (overturned on other grounds by *Green*, 242 S.W.3d 374). In the present case, Agnello's petition pled damages related to cabinetry work in the categories of "removing, repairing, and replacing" the Walker-installed cabinetry, not damages for doing work that Walker simply failed to do as required by the contract (*i.e.*, paintwork, installation of a TV swivel, and appliance cabinetry not otherwise contemplated by the original contract work agreed upon). Accordingly, the trial court below did not have authority to award any of the compensatory damages it awarded in accordance with Count II, because those damages were not pled as items of damages in the Agnello petition. Having erroneously entered an award of compensatory damages in favor of Agnello on Count II, those damages are stricken from the default judgment.[12]

Absent an authorized award of actual or compensatory damages on Count II, the trial court was also without authority to issue an award of punitive damages on Count II. *Kelly v. State Farm Mut. Auto. Ins. Co.*, 218 S.W.3d 517, 526 (Mo. App. W.D.2007) ("Compensable harm stemming from a cognizable cause of action must be shown to exist before punitive damages can be considered."). This is particularly true of punitive damages in a contract action setting. *Peterson v. Continental Boiler Works, Inc.*, 783 S.W.2d 896, 902–03 (Mo. banc 1990). Finally, actual or compensatory damages must be recovered under the claim for which the punitive

12. We briefly note that Agnello's petition did plead damages which will "exceed $50,000" related to "removing, repairing, and replacing" the Walker-installed cabinetry and, as previously stated, Agnello presented substantial evidence at the default hearing that this category of damages totaled $53,300, which is *substantially similar* to a pleading description of "exceeding $50,000." However, had the amount of damages sought on Count I been substantially more than $50,000, we may have been compelled to reach a different result about the amount of damages that Agnello could have recovered at the default hearing. The devil, as they say, is in the details and we caution plaintiffs in a default setting to plead damages with factual particularity if they wish to recover those damages via default judgment.

damages are recovered as a pre-condition to a right to seek punitive damage relief. *Envtl. Energy Partners, Inc. v. Siemens Bldg. Techs., Inc.*, 178 S.W.3d 691, 713 (Mo.App. S.D.2005) (holding that damages are assessed separately for each claim that is tried, and there can be no award of punitive damages absent an award of actual damages). Therefore, because we have ruled that the trial court lacked authority to enter actual damages on Count II, the trial court also lacked the authority to issue an award of punitive damages on Count II and the punitive damage award is stricken from the default judgment herewith.[13]

Regarding Count V, the trial court's default judgment awarded the same actual damages of $6,089 as it awarded on Count II. For the same reasons as addressed in our assessment of the trial court's award of these identical damages as actual damages in accordance with Count II, the trial court's award of these same damages are likewise not authorized as actual damages for Count V and are ordered stricken from the judgment.

 The only remaining item of damages in the trial court's default judgment is the award of damages of attorney's fees in the amount of $25,000 in accordance with Count V, the MMPA count. Missouri recognizes the American Rule of a litigant's right to recover attorney's fees, which is to say, each party bears the cost of their own attorney's fees absent statutory authorization or contractual agreement, with few exceptions applied in very unusual circumstances. *David Ranken, Jr. Technical Inst. v. Boykins*, 816 S.W.2d 189, 193 (Mo. banc 1991) (overruled on other grounds by *Alumax Foils, Inc. v. City of St. Louis*, 939 S.W.2d 907 (Mo. banc 1997)); *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 166 (Mo.App. W.D. 2006). Agnello asserted the right to an award of attorney's fees based upon the statutory authorization provided for in the MMPA. *See* § 407.025.1. However, the statutory authorization of such attorney's fees award under the MMPA is conditioned upon the plaintiff prevailing in establishing actual damages under the MMPA, and absent such award of actual damages, the trial court is not authorized to award attorney's fees. *See* § 407.025.1 ("The court may, in its discretion ... award to the prevailing party attorney's fees...."). In the instant case, having stricken the award of actual damages related to Count V of the default judgment, it necessarily follows that Agnello did not prevail on the MMPA count, and accordingly, the award of attorney's fees must also be stricken, as the trial court had no authority to issue its award of attorney's fees.

We affirm the default judgment as to Count I and reverse the default judgment as to Count II and Count V and herewith order that all awards of damages related to Count II and Count V be stricken from the default judgment, leaving a remaining default judgment of damages in favor of Agnello and against Walker in the amount of $53,300.

JAMES EDWARD WELSH, Presiding Judge, and KAREN KING MITCHELL, Judge, concur.

---

**13.** Having stricken the award of punitive damages from the default judgment, we need not address Walker's claim that the trial court lacked authority to issue punitive damages on Count II in excess of the amount of punitive damages requested in the Agnello petition.