

# In the Missouri Court of Appeals
## Western District

THE WANDA MYERS LIVING TRUST,  )
                                  Respondent,  )

v.  )           WD77385

                                         )

NEA LG LE, et al.,  )       FILED: April 28, 2015

                        Appellants.  )

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### THE HONORABLE ROBERT L. TROUT, JUDGE

### BEFORE DIVISION FOUR: ALOK AHUJA, CHIEF JUDGE, PRESIDING,
### JOSEPH M. ELLIS, JUDGE AND MARCO A. ROLDAN, SPECIAL JUDGE

Nea Lg Le ("Appellant") appeals from a default judgment entered against him in the Circuit Court of Jackson County in favor of the Wanda Myers Living Trust ("Respondent"). For the following reasons, the judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

In March 2009, Respondent renewed the lease on one of its properties to a dry cleaning business that had been operating there for many years. The renewed lease was to run until May 31, 2013. Later in 2009, Appellant purchased that dry cleaning business from the previous owner. Eventually, Appellant fell significantly behind in his payments to Respondent. On May 17, 2013, after Respondent indicated that it was not willing to renew the lease, Appellant contracted with Respondent to purchase the

property for $40,000. The sale was to close on June 20, 2013. When Appellant was unable to acquire the funds to purchase the property and the sale fell through, Respondent instructed its attorney to terminate Appellant's tenancy. On July 18, 2013, Respondent's attorney sent Appellant a letter notifying him that, pursuant to § 441.060, his month-to-month tenancy was being terminated effective August 31, 2013.[1]

When Appellant failed to timely vacate the premises, on September 10, 2013, Respondent filed a petition against Appellant in the Circuit Court of Jackson County, asserting claims for rent and possession, unlawful detainer, and waste.[2] With regard to its unlawful detainer claim, Respondent pleaded that, starting on or about May 31, 2013, Respondent had the right to possession of the premises after having made a written demand for delivery of that property and that, from that date on, Appellant had "wrongfully and without force by disseisin and continued in" possession thereof. Subsequently, on September 18, 2013, after discovering that Appellant had begun operating his business at another location, Respondent changed the locks on the property and thereafter refused to grant Appellant access to the property, though equipment owned by Appellant and some of his clients' property remained in the building.

On October 2, 2013, Appellant, acting *pro se*, filed a motion requesting a continuance which was granted by the court, and a hearing was set for October 22, 2013. On October 21, 2013, after Appellant had retained counsel, the parties filed a Joint Motion for Continuance indicating that the parties were discussing settlement and that Appellant would be filing an Answer and Counterclaim with the consent of

---

[1] The letter further stated that it was to "serve as the necessary notice for obtaining judgment and execution pursuant to Chapters 524, 534, and 535 of the statutes of the State of Missouri."
[2] The docket sheets indicate that Appellant was served with the petition on September 18, 2013.

2

Respondent. That motion was granted by the court, and the cause was set for a hearing on November 12, 2013. On November 11, 2013, the parties filed another joint motion for continuance, again stating that the parties were discussing settlement and that Appellant would be filing an Answer and Counterclaim with the consent of Respondent. The court granted that motion, and a hearing was set for December 10, 2013.

On December 10, 2013, when neither Appellant nor his attorney appeared for the scheduled hearing, Respondent verbally asked the court to enter a default judgment against Appellant. At that hearing, Respondent offered into evidence an affidavit that had been executed by its trustee on October 2, 2013. In that affidavit, the trustee stated that, after the sale of the property failed to close in June 2013, he had instructed counsel to notify Appellant that the tenancy was being terminated and to vacate the premises. In support of that statement, the trustee cited counsel's letter of July 18, 2013, which was attached as an exhibit to thereto, that terminated Appellant's month-to-month tenancy effective August 31, 2013. The trustee further averred that Appellant's delinquent rent through the end of October 2013 would total $51,800.

When asked by the trial court what Respondent was requesting for damages on its claims, counsel stated:

> Your Honor, this is an action for unlawful detainer. We calculated back rents valued at $49,700. The damages for willful, unlawful, lawfully being in possession is a double that amount, or $99,400. And then there's $225 in service fees that we've incurred.

The trial court subsequently announced its judgment, stating:

> The Court will enter judgment in favor of Plaintiff and against Defendant for possession of the subject premises located at 10101 East 63rd Street,

3

Raytown, Jackson County, Missouri. . . . As to Defendant Lee [sic], the Court will enter judgment for damages for lost rent while lawfully in possession of $49,700, damages while unlawfully in possession of $99,400. The Court, at this time, is not convinced that it has the legal ability to award attorney's fees in this case, so none will be awarded. And the Court will award special process server fees of $140 plus the regular court costs.

The trial court's written judgment awarded those amounts for a total of $149,240 and ordered that Respondent be placed in possession of the property.

The following day, Appellant filed in the circuit court a motion for leave to file his Answer and Counter Claim out of time along with the Answer and Counter Claim he was seeking to file. In that answer, he denied Respondent's allegation that Respondent had the legal right to possession of the property beginning May 31, 2013. He further denied that he was currently in possession of the property and asserted that Respondent had changed the locks on the property on September 18, 2013. Appellant also denied that he was $49,700 in arrears on his rent.

On December 13, 2013, Appellant filed a Motion to Set Aside Default Judgment and suggestions in support thereof. The motion and an affidavit executed by counsel indicated that counsel's secretary had serious health problems, was hospitalized twice in November and December 2013, and had been unable to complete many of her job functions over that period. The motion and affidavit further indicated that counsel had completed the Answer and Counterclaim a week before default judgment was entered but that her secretary had not been able to type and file that document until December 11, 2013. Both documents also stated that counsel had been in Oklahoma in December 2013 dealing with issues in an emergency receivership case. The motion to set aside further pointed out that the judgment entered was based upon an erroneous

4

determination that Appellant was unlawfully in possession of the property for a period of over two years and that Appellant would present evidence to the contrary at trial. Following a hearing, the trial court entered its order denying Appellant's motion to set aside the default judgment.

On appeal, Appellant argues that the trial court abused its discretion in denying his motion to set aside the default judgment. He contends that his motion was filed within a reasonable time and that he had demonstrated good cause and that he had meritorious defenses to Respondent's claims.

"A motion to set aside a default judgment is governed by Rule 74.05(d), which provides that a default judgment may be set aside '[u]pon motion stating facts constituting a meritorious defense and for good cause shown.'" **Agnello v. Walker**, 306 S.W.3d 666, 672-73 (Mo. App. W.D. 2010). "The motion must also be made 'within a reasonable time not to exceed one year after the entry of the default judgment.'" **Maddipati v. Most**, 367 S.W.3d 670, 671 (Mo. App. E.D. 2012) (quoting **Rule 74.05(d)**).

"The trial court is vested with discretion to rule upon a motion to set aside a default judgment and we will not disturb a trial court's ruling under Rule 74.05(d) absent an abuse of discretion." **Agnello**, 306 S.W.3d at 673. "However, it is a well-established principle of Missouri law that our courts disfavor default judgment and prefer that cases be decided on the underlying merits of the case." **Id**. "Consequently, a trial court has broader discretion in granting a motion to set aside a default judgment than in overruling such a motion." **Id**.; *see also* **Sastry v. Sastry**, 302 S.W.3d 264, 266 (Mo. App. E.D. 2010) ("We afford trial courts broader discretion when granting a motion to set aside a

5

default judgment than when denying such a motion because of the public policy favoring the resolution of cases on the merits and the distaste our system holds for default judgments.") (internal quotation omitted).

As noted *supra*, a party wishing to have a default judgment set aside is required to (1) file his or her motion within a reasonable time, (2) show the existence of a meritorious defense, and (3) show good cause for the default. *Maddipati*, 367 S.W.3d at 671-72. "To determine compliance with the pleading requirements, we examine the allegations in the defaulting party's motion, and such other matters as affidavits, exhibits, and proposed answers." *Capital One Bank (USA) NA v. Largent*, 314 S.W.3d 364, 366-67 (Mo. App. E.D. 2010).

Respondent concedes, as it must, that Appellant's motion to set aside the default judgment, filed three days after the default judgment was entered, was filed within a reasonable time. Respondent also offers no real challenge on appeal to Appellant's contention that he sufficiently showed good cause.

"[G]ood cause 'includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process.'" *Id.* at 367 (quoting *Rule 74.05(d)*). "Good cause should be given a liberal interpretation and includes good faith mistakes and even negligence in failing to file a timely answer." *Turner v. Gateway Bobcat of Mo. Inc.*, 450 S.W.3d 444, 448 (Mo. App. W.D. 2014) (internal quotation omitted).

Though it does not indicate whether any time limitations were placed thereon, the joint motions for continuance reflect that the parties were involved in settlement negotiations and that Respondent had consented to allowing Appellant to file his answer

6

out of time. Thus, Appellant appears to have had a good faith reason for believing he would be allowed to file his answer without opposition from Respondent.

We are then left with the failure of Appellant or counsel to appear for the December 10, 2013, hearing. However, "[f]ailure to appear is not by itself sufficient grounds for taking a judgment by default." ***Largent***, 314 S.W.3d at 367 (internal quotation omitted). "The failure to appear must be 'inexcusable' for that to justify such a judgment." ***Sastry***, 302 S.W.3d at 267 (internal quotation omitted). According to Appellant's motion and the affidavit submitted by counsel in support thereof, counsel was tied up in emergency receivership proceedings in Oklahoma, and her secretary was seriously ill. At the hearing on the motion to set aside the default judgment, Respondent's counsel specifically stated that he was not disputing that defense counsel was unavailable or that the secretary was ill. Indeed, during oral argument, counsel stated that he did not contest good faith in the trial court. And nothing in the record would indicate that counsel's failure to appear for the hearing or to request a continuance was anything more than a good faith mistake.

Furthermore, Appellant filed his answer the day after the default judgment was entered and filed his motion to set aside the default judgment and suggestions in support of thereof two days later. "Prompt action by a movant assists in establishing the defendant's good faith required under Rule 74.05(d)." ***Largent***, 314 S.W.3d at 367 (internal quotation omitted).

In short, nothing in the record would indicate that Appellant's failure to file his answer prior to December 10, 2013, or his failure to appear for a hearing on that date were the result of anything more than a good faith mistake or simple negligence.

7

Appellant's conduct certainly does not appear "intentionally or recklessly designed to impede the judicial process," and Respondent has made no such assertion to the circuit court or on appeal.

Respondent's opposition to the setting aside of the default judgment has focused, both at trial and on appeal, on the meritorious defense element. Respondent contends that Appellant failed to show that he had a meritorious defense available to him.

"'Meritorious defense' has been interpreted liberally to mean any factor likely to materially affect the substantive result of the case." *State ex rel. Koster v. Johnson*, 367 S.W.3d 636, 640 (Mo. App. W.D. 2012) (internal quotation omitted). "In order to show a meritorious defense, a party . . . need only make some showing of at least an arguable theory of defense." *Id*. "This concept is not intended to impose a high hurdle, but is meant to allow the case to be decided on its merits where there are legitimate issues to be considered." *Id*. "A party satisfies the requirement if he or she sets forth allegations which, if supported by evidence, would defeat or adversely affect the plaintiff's claim." *Id*.

Both Appellant's motion to set aside the default judgment and his proposed answer challenged the length of the period of unlawful possession of the premises alleged by Respondent. "Damages in an unlawful detainer case may be recovered in the amount of the fair rental value of the premises during the period of unlawful detainer." *Colt Invs., L.L.C. v. Boyd*, 419 S.W.3d 194, 197 (Mo. App. E.D. 2013). "Damages for rents in an unlawful detainer action may be assessed from the date on which the party becomes entitled to possession of the premises." *Gordon v. Williams*, 986 S.W.2d 470, 474 (Mo. App. E.D. 1998). Accordingly, the double-damages allowed

8

for unlawful detainer are assessed from the date upon which possession was demanded and the plaintiff became entitled to assume possession of the property up until the date the tenant vacates the premises.[3] *Moser v. Cline*, 214 S.W.3d 390, 393 (Mo. App. W.D. 2007). Because damages are doubled in an unlawful detainer action for the period of unlawful possession of the property, a reduction of that time period would certainly materially affect the verdict in such a case.

In its petition, Respondent claimed to have been entitled to possession of the property as of May 31, 2013, and that Appellant was wrongfully in possession of the property from that date on. At the default judgment hearing, Respondent claimed to be entitled to unlawful detainer damages for a period of several years.

The affidavit and exhibits entered into evidence by Respondent at the default judgment hearing, however, clearly reflect that Respondent terminated Appellant's month-to-month tenancy effective August 31, 2013.[4] Thus, Appellant most definitely had a valid defense to Respondent's claim that the period of unlawful possession, for which it was entitled to double damages, began before that date. Moreover, Appellant's answer asserted that Respondent had changed the locks on the property on September 18, 2013, and denied him any access to the property thereafter.[5] Thus, the period over which Appellant unlawfully possessed the property arguably lasted as little as eighteen

---

[3] The reasonable amount of monthly rent is to be pro-rated to reflect the exact number of days the defendant was in unlawful possession of the premises. *Colt Investments, L.L.C. v. Boyd*, 419 S.W.3d 194, 198 (Mo. App. E.D. 2013).

[4] "Section 441.060.4(1) provides, in pertinent part, that 'the landlord or tenant may terminate a month-to-month tenancy by a written notice given to the other party stating that the tenancy shall terminate upon a periodic rent-paying date not less than one month after the receipt of the notice.'" *Star Dev. Corp. v. Urgent Care Assocs.*, 429 S.W.3d 487, 495 (Mo. App. W.D. 2014).

[5] On appeal, Respondent concedes that it changed the locks on the property on September 18, 2013, but it argues that Appellant should be considered to have continued to unlawfully possess the property because some property belonging to Appellant and his customers remained in the store after that date.

9

days.[6]   In short, in challenging the length of unlawful possession asserted by Respondent, Appellant asserted a meritorious defense.

As noted supra, the trial court has less discretion to deny a motion to set aside a default judgment than it does to grant such a motion. *Agnello*, 306 S.W.3d at 673. Given the promptness with which Appellant sought to have the default judgment set aside and his establishment of good cause and a meritorious defense, we are left to conclude that the trial court abused that discretion in refusing to set aside the default judgment in this case.

Accordingly, the judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.[7]

_____
Joseph M. Ellis, Judge

All concur.

---

[6] Double the amount of the fair rental value of the property over that time period would fall well short of the $99,400 in damages claimed by Respondent and awarded by the trial court on the unlawful detainer claim. Assuming that $2,100 per month was the fair rental value for the property, a fact that Appellant disputed in his motion to set aside the default judgment, the pro-rated rental amount for those eighteen days would be $1,260, and double that amount would be $2,520.

[7] Having reached this conclusion, we need not address Appellant's additional claim on appeal that the damages awarded in the default judgment were not supported by the evidence presented by Respondent at the default judgment hearing.

10