

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

IN THE INTEREST OF: B.K.B.,     )
               Juvenile,   )
                         )
JUVENILE OFFICER,     )
         Respondent,   )
v.                        )    WD85225
                         )
D.G.,                 )    FILED: October 25, 2022
             Appellant.   )

### Appeal from the Circuit Court of Cole County
### The Honorable Jon E. Beetem, Judge

### Before Division One: W. Douglas Thomson, P.J.,
### Alok Ahuja, J., and Terry A. Tschannen, Sp.J.

The Circuit Court of Cole County entered a default judgment terminating the parental rights of D.G. (hereafter "Mother") to her infant daughter B.K.B. Mother filed a motion to set aside the default judgment, which the circuit court denied. Mother appeals. Because Mother was not required to file a pleading in response to the Juvenile Officer's petition to terminate her parental rights, the circuit court erroneously found Mother to be in default. The circuit court's refusal to set aside its termination-of-parental-rights judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

## Factual Background

B.K.B. is a female born in March 2018. On August 18, 2019, Jefferson City Police took B.K.B. into protective custody after Mother was arrested for first-degree endangering the welfare of a child with respect to B.K.B. Mother was appointed

counsel in the abuse and neglect case in the Circuit Court of Cole County, No. 19AC-JU00119.

A petition to terminate parental rights of both Mother and B.K.B.'s natural father was first filed in the Circuit Court of Cole County on September 15, 2020, in Case No. 20AC-JU00121. Trial was held on February 1, 2021. On March 11, 2021, the circuit court entered its judgment terminating the rights of B.K.B.'s natural father. The court found, however, that the Juvenile Officer had failed to prove by clear and convincing evidence that a statutory basis existed for termination of Mother's parental rights at that time.

The Juvenile Officer filed a second petition to terminate Mother's parental rights on August 21, 2021. Mother was personally served a summons and copy of the petition on August 26, 2021, while she was incarcerated at the Phelps County Jail in Rolla. The summons stated:

> You are summoned to appear before this Court . . . on September 1, 2021, at 1:00 p.m. for a hearing on the Petition for Termination of Parental Rights.

> You are summoned to appear before the above-named Court, and you may file your Answer or responsive pleading to the Petition for Termination of Parental Rights, a copy of which is attached hereto . . . . Your responsive pleading should be filed within 30 days after service of this Summons upon you, exclusive of the day of service.

> ***If you fail to appear and have not filed a responsive pleading, then judgment by default will be taken against you*** for the relief demanded in the Petition for Termination of Parental Rights.

(Emphasis added.)

The summons further notified Mother that she had the right to be represented by an attorney, and that the court would appoint an attorney for her if she could not afford one and requested appointed counsel.

On September 1, 2021, the court issued an Order on First Appearance finding that, although duly summoned, Mother had failed to appear. The court set the case

2

for a status review on October 13, 2021. Mother remained in detention at the Phelps County Jail at the time of the September 1 hearing.

The record does not indicate that the circuit court gave Mother notice of the October 13, 2021 hearing. On September 10, 2021, a Deputy Juvenile Officer filed a Certification of Notice stating that written notice had been provided to various parties "of the date and time of the next hearing scheduled for October 13, 2021, at 1:00 p.[m.]" The Certification of Notice provided no information concerning the nature of the upcoming hearing, and at argument counsel for the Juvenile Officer acknowledged that nothing beyond the Certification of Notice itself would have been provided to recipients. A checked box on the form stated that written notice of the October 13 hearing had been given to Mother "By Mail/Email/FAX." The Certification did not indicate the specific method by which Mother was purportedly notified of the October 13 hearing, or state the address or phone number to which notice was directed.

On October 13, 2021, a second case review was held. The circuit court entered an Order on Second Appearance finding that, although duly summoned, Mother had once again failed to appear. The Order stated: "Natural mother was served on August 26, 2021, and more than 30 days has elapsed with no answer or response by natural mother and therefore Natural Mother is found in <u>DEFAULT</u>." The Order stated that "[t]he case is set for hearing as to Best Interests of TPR on October 21, 2021"; the Order also stated that "[t]he case is set for hearing on the petition for termination of parental rights on October 21, 2021."

Because it had found Mother to be in default, the circuit court did not itself notify Mother of the October 21, 2021 hearing. On October 21, 2021, a Deputy Juvenile Officer filed a Certification of Notice, indicating that on October 13, 2021, she had given written notice "of the date and time of the next hearing scheduled for October 21, 2021 at 9a.[m.]" to Mother "by Mail/Email/FAX," at an unspecified

3

address or phone number. As with the prior Certification of Notice, the form filed by the Deputy Juvenile Officer provided no information concerning the nature of the scheduled hearing.

An evidentiary hearing on the Juvenile Officer's petition for termination of Mother's parental rights was held on October 21, 2021. The circuit court began the hearing with the following observations:

> Preliminary matters first. The court file reflects that on or about . . . October 13th of this year the case was called. Natural mother had been served on August 26, failed to appear in response to the summons and more than 30 days had elapsed with no answer or response by the natural mother and an interlocutory order of default was entered. Mother has an attorney in the underlying juvenile case but she did not reach out or speak with anyone. This is also mother's second go-around with TPR so she knows how this works, we've been through that with her before. Natural mother having been in default, the court continued the matter for hearing on the issue of best interests and the foster care agency was directed to file the investigation and social summary.

Consistent with the court's opening remarks, at the conclusion of the evidentiary hearing counsel for the Juvenile Officer reminded the court that Mother "has been duly noticed and has failed to respond or appear"; the Juvenile Officer accordingly requested "that the default be made permanent, ordered, and in the best interest of [B.K.B.]."

On November 2, 2021, the circuit court entered a judgment terminating Mother's parental rights. On the same day, the clerk filed a Notice of Entry certifying that a copy of the judgment had been mailed to Mother, at an unspecified address, on the date of its entry.

Unlike in the first termination-of-parental-rights proceeding, Mother's appointed counsel in the underlying abuse and neglect case did not appear on her behalf in the second termination proceeding. Appointed counsel filed a motion to withdraw in the abuse and neglect case on November 4, 2021. On November 10,

4

counsel submitted to the circuit court a November 7 letter from Mother, in which she requested that counsel be appointed to represent her in an appeal of the November 2 termination-of-parental-rights judgment. The circuit court appointed counsel for Mother in the termination proceeding on November 18, 2021. Counsel entered his appearance on Mother's behalf on December 1, 2021.

Mother filed a motion to set aside the termination judgment on December 13, 2021. In her motion, Mother argued that it was improper for the court to enter a default because Mother was not required to file a responsive pleading. Mother also argued that she had been denied due process when the circuit court failed to notify her of subsequent hearings due to her purported default.

The circuit court denied Mother's motion to set aside the November 2, 2021 judgment on March 3, 2022. The March 3 ruling stated emphatically that "**THIS WAS A DEFAULT JUDGMENT**." The March 3 ruling stated that "Mother was found to be in default" on October 13, 2021, and that "[a] default judgment was entered on November 2, 2021 after a best interests hearing on October 21, 2021." Although the circuit court recognized that Mother was "not required to file a responsive pleading," it nevertheless held that Mother defaulted by failing either to file a responsive pleading, or to appear at the September 1 and October 13 hearings.

> The summons provided Mother with two independent means to avoid a default judgment. Show up in court or file an answer with the court. She availed herself of neither option. Mother was in default.

The circuit court found that Mother had failed to establish a basis to set aside the default judgment under Rule 74.05(d), since she had failed to establish either good cause for her failure to plead or appear, or a meritorious defense to the termination petition. Because she was in default, the court held that Mother was not entitled to notice of later proceedings in the case.

This appeal follows.

5

## Standard of Review

Whether the circuit court had the authority to enter a default judgment is a question of law which we review *de novo*. *General Credit Acceptance Co. v. Reese*, 375 S.W.3d 264, 265 (Mo. App. E.D. 2012); *Agnello v. Walker*, 306 S.W.3d 666, 676 (Mo. App. W.D. 2010).

Where the circuit court had the authority to enter a default judgment, this Court reviews the court's refusal to set aside a default judgment for an abuse of discretion. *Henry v. Piatchek*, 578 S.W.3d 374, 377-78 (Mo. 2019); *New LLC v. Bauer*, 586 S.W.3d 889, 894 (Mo. App. W.D. 2019). The circuit court abuses its discretion when its ruling "is so clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Hancock v. Shook*, 100 S.W.3d 786, 795 (Mo. 2003).

Even where the circuit court had authority to enter a default judgment, there is a "strong preference for deciding cases on the merits and against resolving litigation by default." *In re Marriage of Callahan*, 277 S.W.3d 643, 644 (Mo. 2009). Circuit courts accordingly have narrower discretion when overruling a motion to set aside a default judgment than when sustaining such a motion. *Id.* Furthermore, the court's discretion "is limited even further in cases involving child custody." *Scott by Scott v. Borden*, 648 S.W.3d 68, 72 (Mo. App. W.D. 2022) (citing *Dozier v. Dozier*, 222 S.W.3d 308, 311-12 (Mo. App. W.D. 2007)). Rules pertaining to the setting aside of default judgments are less rigorously applied in cases involving child custody, because the child's welfare is paramount and the adversarial process better protects the child's interests. *Id.* "Default judgments in custody cases are strongly disfavored and a refusal to set aside such a judgment is reviewed with heightened scrutiny." *Id.* (quoting *Cutter-Ascoli v. Ascoli*, 32 S.W.3d 167, 169 (Mo. App. E.D. 2000)).

## Discussion

We agree with Mother's principal contention on appeal: that the circuit court erroneously found her to be in default, because she was not required to file a response to the Juvenile Officer's petition to terminate her parental rights.

Rule 74.05(a) provides that a default judgment may be entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules."

The rules did not require Mother to file a response to the Juvenile Officer's termination petition. Rule 113.03, which applies to juvenile and family-court cases, unambiguously states:

> No party is required to file a responsive pleading. A party may file a response to any pleading or motion at any time prior to, or at commencement of, the hearing on the pleading or motion.

The parties and the circuit court all agree that under Rule 113.03, Mother was not required to file any pleading in response to the Juvenile Officer's petition for termination of parental rights.

Because no responsive pleading was required, Mother was deemed to have denied the Juvenile Officer's allegations. Rule 55.09 states:

> Specific averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleadings. ***Specific averments in a pleading to which no responsive pleading is required shall be taken as denied***.

(Emphasis added.) *See also* § 509.100, RSMo (same); *Hertzog v. City of Greenwood*, 944 S.W.2d 588, 589 (Mo. App. W.D. 1997) (circuit court erroneously deemed additional facts alleged in a defendant's answer to have been admitted by the plaintiff, where no responsive pleading was required). Notably, the Juvenile Officer himself acknowledges that, pursuant to Rule 55.09 and § 509.100, RSMo, Mother's failure to file a responsive pleading "was understood by [the Juvenile Officer] and the trial court as *a denial of all allegations*." (Emphasis added.)

7

Because a defendant is deemed to have denied the allegations of a pleading to which no response is required, this Court has held that a party cannot be in default for failing to file a responsive pleading when none is required by the rules. Thus, in proceedings in which a driver seeks judicial review of the administrative suspension of their license, the Director of Revenue is not required to file a responsive pleading. This Court has accordingly held that the Director is not subject to the entry of a judgment by default, even where the Director fails to file a pleading or appear at trial. Even though the Director may have taken no affirmative steps to defend the action, we have explained that "[t]o refer to this judgment as a *default* judgment is a misnomer. The Director is not required to file a responsive pleading and is, thus, not subject to judgment by default." *Gabbert v. State*, 636 S.W.3d 194, 196 n.4 (Mo. App. W.D. 2021) (citing *Nguyen v. Dir. of Revenue*, 900 S.W.2d 238, 239 (Mo. App. E.D. 1995)); *see also Mottet v. Dir. of Revenue*, 635 S.W.3d 862, 864 n.1 (Mo. App. W.D. 2021) (same).

This Court has similarly held that a party which fails to defend a motion to modify child support is not in default, even if the party fails to defend the motion to modify in any way, because no pleading is required in response to a modification motion. We have explained:

> [I]n accordance with Rule 74.05(a), it is the failure to file a responsive pleading that causes a party to be in default, not the party's failure to appear for trial. However, Rule 74.05(a) makes it clear that it is the failure to file a responsive pleading "as provided by these rules," meaning the Missouri Rules of Civil Procedure, that causes a party to be in default such that a party will only be in default, for failure to file a responsive pleading, *if* a responsive pleading was required to be filed under the rules of civil procedure. Hence, the appellant would only have been in default, with respect to the respondent's amended motion to modify child support, if she were required, as provided in the rules, to file a responsive pleading to the respondent's motion.
>
> . . . "[N]one of our rules or statutes require the filing of a formal answer or other responsive pleading to a motion to modify child support." . . . Thus, because the appellant was not required to file a

8

> responsive pleading to the respondent's amended motion to modify
> child support, her failure to file one did not cause her to be in default
> with respect thereto. And, her failure to appear was not sufficient to
> hold her in default.

*Cramer v. Carver*, 125 S.W.3d 373, 376 (Mo. App. W.D. 2004) (citations omitted); *see also, e.g.*, *Johnson v. Riley*, 573 S.W.3d 119, 122 n.3 (Mo. App. W.D. 2019) ("A motion to modify does not require a responsive pleading and failure to file one does not merit default (even when combined with a failure to appear at trial)."; citing *Cramer*, 125 S.W.3d at 376); *Schwermer v. Schwermer*, 350 S.W.3d 460, 463 (Mo. App. W.D. 2011) (same).

We recognize that, in proceedings in the associate circuit division of the circuit court, default judgments are frequently entered, even though defendants are not generally required to file responsive pleadings by virtue of § 517.031.2, RSMo. Although responsive pleadings are not generally required, § 517.131, RSMo expressly authorizes the entry of a default judgment "when the opposing party has been duly and timely served with summons and does not appear in court on the return date or subsequent date to which the case has been continued." As the Eastern District recently explained, because a defendant is not required to file a responsive pleading in most associate circuit division cases, and is deemed to have denied the allegations in the petition, "a defendant cannot be in default in a chapter 517 claim for failure to file a responsive pleading. A default judgment is only possible under chapter 517 if the defending party fails to appear in court on the return date or subsequent date to which the case had been continued. Section 517.131." *Zick, Voss, Politte & Richardson v. Puetz*, 629 S.W.3d 843, 846 (Mo. App. E.D. 2021). No similar statutory provision authorizes the entry of a default judgment in termination of parental rights cases based on a parent's failure to appear.

9

Because Mother was not required to file a response to the Juvenile Officer's petition for termination of her parental rights, the allegations of the petition were "taken as denied," and Mother could not be held in default. The circuit court had no authority to enter a default judgment against Mother.

Because the circuit court had no authority to enter a default judgment against her, Mother was entitled to have the termination judgment set aside as "irregular" under Rule 74.06(b)(3).

> An irregularity may be defined to be the want of adherence to some procedural rule or mode of proceeding; and it consists either in omitting to do something that is necessary for the due and orderly conduct of a suit, or in doing it in an unseasonable time, or improper manner.

*Barney v. Suggs*, 688 S.W.2d 356, 359 (Mo. 1985) (citation omitted). An "irregular" judgment "is one achieved in a manner materially contrary to the law's established procedures for the orderly administration of justice." *Lambert v. Holbert,* 172 S.W.3d 894, 898 (Mo. App. S.D. 2005); *see also Kerth v. Polestar Entertainment*, 325 S.W.3d 373, 389 (Mo. App. E.D. 2010); *Burris v. Terminal R.R. Ass'n*, 835 S.W.2d 535, 538 (Mo. App. E.D. 1992).

In this case, the circuit court entered a default judgment terminating Mother's parental rights, following a trial scheduled on eight days' notice. The court did not inform Mother of the trial date, despite the fact that Mother was *not* in default under the relevant procedural rules. This result was "materially contrary to the law's established procedures for the orderly administrative of justice," and the judgment was accordingly "irregular" within the meaning of Rule 74.06(b)(3). *See Zick, Voss, Politte & Richardson*, 629 S.W.3d at 846 (court's improper entry of default judgment where no responsive pleading was required was "beyond the court's authority and manifestly erroneous"; citing *Agnello v. Walker*, 306 S.W.3d 666, 676 (Mo. App. W.D. 2010)); *Fisher v. Mahler*, 407 S.W.2d 590, 591 (Mo. App.

10

1966) (default judgment was "irregular" where respondent had in fact filed an answer).[1]

The relief awarded by the circuit court in this case "has been characterized as tantamount to a 'civil death penalty.' 'It is a drastic intrusion into the sacred parent-child relationship.'" *In re K.A.W.*, 133 S.W.3d 1, 12 (Mo. 2004) (citations omitted). Termination of parental rights requires a two-step analysis, under which the circuit court must first find, by clear and convincing evidence, that one of the statutory grounds for termination under § 211.447.2, RSMo exists; the court must then determine by a preponderance of the evidence that termination is in the child's best interests. *See, e.g.*, *In re C.E.A.*, 646 S.W.3d 419, 429 (Mo. App. S.D. 2022). In this case, however, the circuit court apparently skipped the first step. The court's statements at the outset of the October 21, 2021 hearing, and in its judgment denying Mother's motion to set aside, indicate that the court found statutory grounds for termination based simply on Mother's purported default, and took evidence (without notice to or participation by Mother) solely concerning B.K.B.'s best interests. Particularly given the severity of the relief awarded by the circuit court, the judgment must be vacated based on the irregular procedures which were employed.

---

[1] The circuit court did not itself give Mother notice of the October 21 evidentiary hearing. The court made no finding as to whether Mother received actual notice of the October 21 hearing by receipt of the Deputy Juvenile Officer's "Certification of Notice," or whether that Certification was sent in a manner reasonably calculated to provide Mother with such notice. The Certification of Notice does not provide an adequate record as to *how* notice was sent to Mother, or *where* such notice was sent. Instead, it merely states that the Certification was sent "by Mail/Email/FAX" – leaving the circuit court to speculate as to how and where it was sent, and whether Mother received it. Even if the Certification of Notice was dispatched to Mother by appropriate means, it provided *no* information concerning the nature of the hearing scheduled for October 21. To the extent that reasonable efforts were not made to notify Mother of the October 21 trial setting, that lack of notice would independently constitute grounds to find the termination judgment irregular. *See, e.g.*, *Breckenridge Material Co. v. Enloe*, 194 S.W.3d 915, 921 (Mo. App. E.D. 2006).

11

## Conclusion

The circuit court's March 3, 2022 judgment, which refused to set aside the court's earlier judgment terminating Mother's parental rights, is reversed. The case is remanded to the circuit court for further proceedings consistent with this opinion.

_____
Alok Ahuja, Judge

All concur.